Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9662
Facsimile: (310) 595-9501

Ian M. Ross (admitted *pro hac vice*)
iross@sidley.com
SIDLEY AUSTIN LLP
1001 Brickell Bay Drive, Suite 900
Miami, FL 33131
Telephone: (305) 391-5218
Facsimile: (305) 391-5101

*Attorneys for Defendant*
*Grow Care, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JANE DOE 1 and JANE DOE 2, individually and on behalf of all other persons similarly situated,

Plaintiffs,

vs.

GROW CARE, INC.,

Defendant.

Case No. 5:24-cv-09122-NW
Assigned to: Hon. Noël Wise

**DEFENDANT GROW CARE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Date: July 30, 2025
Time: 9:00 a.m.
Place: Courtroom 3, 5th Floor

Amended Complaint Filed: March 5, 2025

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on July 30, 2025 at 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 3, 5th Floor of the United States District Court for the Northern District of California, San Jose Courthouse, 280 South 1st Street, San Jose, CA 95113, Defendant Grow Care, Inc. ("Grow Care"), shall and hereby does move to dismiss Plaintiff Jane Doe 1 and Plaintiff Jane Doe 2's (collectively, "Plaintiffs") Class Action Complaint (the "Complaint") pursuant to 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and such other matters as the Court may consider.

**STATEMENT OF ISSUES PRESENTED**

1. Whether the Complaint should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction.

2. Whether Plaintiffs' claim under the Electronic Communications Privacy Act must be dismissed under Rule 12(b)(6) for failure to plausibly state a claim.

3. Whether Plaintiffs' claim under the California Invasion of Privacy Act must be dismissed under Rule 12(b)(6) for failure to plausibly state a claim.

4. Whether Plaintiffs' claim under the California Confidentiality of Medical Information Act must be dismissed under Rule 12(b)(6) for failure to plausibly state a claim.

5. Whether Plaintiffs' claim for Invasion of Privacy Under California's Constitution must be dismissed under Rule 12(b)(6) for failure to plausibly state a claim.

6. Whether Plaintiffs' claim for intrusion upon seclusion must be dismissed under Rule 12(b)(6) for failure to plausibly state a claim.

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. FACTUAL ALLEGATIONS ..... 2

III. LEGAL STANDARD ..... 4

IV. ARGUMENT ..... 4

A. The Court Lacks Personal Jurisdiction Over Grow Care. ..... 4

1. There Is No General Jurisdiction Over Grow Care in California. ..... 5

2. There Is No Specific Jurisdiction Over Grow Care in California. ..... 5

a. There is No Purposeful Direction Toward California. ..... 6

i. None of Grow Care's Alleged Acts Were "Expressly Aimed" at California. ..... 6

ii. Grow Care's Alleged Actions Did Not Cause Harm That Grow Care Knew Was Likely to be Suffered in California. ..... 12

b. Plaintiffs' Claims Do Not Arise Out of or Relate To Grow Care's Forum-Related Activities. ..... 12

c. Subjecting Grow Care to Jurisdiction in California Would Be Unreasonable. ..... 15

B. Plaintiffs' Complaint Should Be Dismissed Because It Fails to Plead a Plausible Claim for Relief ..... 16

1. Plaintiffs' Claims Under the Electronic Communications Privacy Act ("ECPA") and the California Invasion of Privacy Act ("CIPA") (Counts I and II) (the "Wiretap Claims") Must Be Dismissed. ..... 16

2. Plaintiffs' Claim for Violation of the California Confidentiality of Medical Information Act ("CMIA") (Count III) Should Be Dismissed. ..... 20

3. Plaintiffs' Invasion of Privacy Claims (Counts IV & V) Should Be Dismissed. ..... 22

V. CONCLUSION ..... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMA Multimedia, LLC v. Wanat*,
970 F.3d 1201 (9th Cir. 2020) .......... *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4

*In re Auto. Antitrust Cases I & II*,
135 Cal. App. 4th 100 (2005) .......... 12

*Ayer v. White*,
No. 21-cv-08773-RSWL, 2022 WL 657502 (C.D. Cal. Mar. 4, 2022) .......... 13

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
11 F.4th 972 (9th Cir. 2021) .......... 9, 15

*Barbour v. John Muir Health*,
No. C22-01693, 2023 WL 2618967 (Cal. Super. Ct. Jan. 5, 2023) .......... 21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4

*Belluomini v. Citigroup, Inc.*,
No. cv-13-01743-CRB, 2013 WL 3855589 (N.D. Cal. July 24, 2013) .......... 22

*Brand v. Menlove Dodge*,
796 F.2d 1070 (9th Cir. 1986) .......... 5

*Bristol-Myers Squibb Co. v. Superior Court*,
582 U.S. 255 (2017) .......... 12

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 18

*Caruth v. Int'l Psychoanalytical Ass'n*,
59 F.3d 126 (9th Cir. 1995) .......... 16

*Cole v. Quest Diagnostics, Inc.*,
No. 2:23-cv-20647-WJM, 2025 WL 88703 (D.N.J. Jan. 14, 2025) .......... 19

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 21

*Cybersell, Inc. v. Cybersell, Inc.*,
130 F.3d 414 (9th Cir. 1997) .......... 6

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ....................4, 5

*Doctor's Fin. Network, Inc. v. DrDisabilityQuotes.com, LLC*,
No. 21-02034-CJC(JDEx), 2022 WL 19404853 (C.D. Cal. Mar. 3, 2022) ....................6, 7, 11

*Doe v. Amgen Inc.*,
No. 2:23-cv-07448-MCS-SSC, 2024 WL 575248 (C.D. Cal. Jan. 29, 2024) ....................23

*Doe v. FullStory, Inc.*,
No. 23-CV-00059-WHO, 2024 WL 188101 (N.D. Cal. Jan. 17, 2024) ....................7

*Egan v. X-Mode Social, Inc.*,
No. 23-cv-11651-DJC, 2024 WL 2701967 (D. Mass. May 24, 2024) ....................10, 14

*Eisenhower Med. Ctr. v. Superior Court*,
172 Cal. Rptr. 3d 165 (Ct. App. 2014) ....................21

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
592 U.S. 351 (2021) ....................13

*Garcia v. Build.com, Inc.*,
No. 22-cv-01985-DMS-KSC, 2023 WL 4535531 (S.D. Cal. July 13, 2023) ....................22

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
564 U.S. 915 (2011) ....................4, 5

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
806 F.3d 125 (3d Cir. 2015) ....................19

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ....................18, 24

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................22

*Hammerling v. Google LLC*,
No. 21-CV-09004-CRB, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022), *aff'd*, No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024) ....................20

*Hammerling v. Google, LLC*,
No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024) ....................24

*Handsome Music, LLC v. Etoro USA LLC*,
No. 20-08059-VAP, 2020 WL 8455111 (C.D. Cal. Dec. 17, 2020) ....................7

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ....................23

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) ....................6

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ....................24

*Katz-Lacabe v. Oracle Am., Inc.*,
No. 22-cv-04792-RS, 2023 WL 2838118 (N.D. Cal. 2023) ....................17

*Kauffman v. Home Depot, Inc.*,
No. 23-CV-0259-AGS, 2024 WL 221434 (S.D. Cal. Jan. 19, 2024) ....................7, 13

*Kurowski v. Rush Sys. for Health*,
No. 22 C 5380, 2023 WL 2349606 (N.D. Ill. Mar. 3, 2023) ....................19

*Licea v. Am. Eagle Outfitters, Inc.*,
No. EDCV-22-1702MWF, 2023 WL 2469630 (C.D. Cal. Mar. 7, 2023) ....................17

*LNS Enters. LLC v. Cont'l Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022) ....................5, 13

*Low v. Linkedin Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................23

*Martin v. Outdoor Network LLC*,
No. 23-cv-09807-AB, 2024 WL 661173 (C.D. Cal. Jan. 31, 2024) ....................7, 8, 11, 15

*Massie v. General Motors Co.*,
No. 1:20-cv-01560-JLT, 2021 WL 2142728 (E.D. Cal. May 26, 2021). ....................7

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) ....................4, 6

*Mikulsky v. Bloomingdale's LLC*,
No. 3:23-CV-00425-L-VET, 2024 WL 3091395 (S.D. Cal. May 14, 2024) ....................19

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ....................7

*Moledina v. Marriott Int'l, Inc.*
635 F. Supp. 3d 941 (C.D. Cal. 2022) ....................8, 12

*Moore v. Rodriguez*,
No. 20-cv-01481-BAS, 2021 WL 2222590 (S.D. Cal. June 2, 2021) ....................24

*Norwest Mortg., Inc. v. Superior Court*,
72 Cal. App. 4th 214 (1999) ....................24

*Ove v. Gwinn*,
264 F.3d 817 (9th Cir. 2001) ....................4

*Rancourt v. Meredith Corp.*,
No. 22-cv-10696-ADB, 2024 WL 381344 (D. Mass. Feb. 1, 2024) ....................................10

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ....................................................................................12

*Regents of Univ. of Cal. v. Superior Court*,
220 Cal. App. 4th 549 (2013) .....................................................................................21

*Rivelli v. Hemm*,
67 Cal. App. 5th 380 (2021) .......................................................................................12

*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021)...................................18

*Sacco v. Mouseflow, Inc.*,
No. 220-CV-02330-TLN, 2022 WL 4663361 (E.D. Cal. Sept. 30, 2022) ...............................7

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ..........................................................................7

*San Diego Cty. Credit Union v. Citizens Equity First Credit Union*,
60 F.4th 481 (9th Cir.), *opinion amended and superseded on denial of reh'g*, 65 F.4th 1012 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 190 (2023)..............................................5

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ...........................................................................5, 6, 12

*Sinatra v. Nat'l Enquirer, Inc.*,
854 F.2d 1191 (9th Cir. 1988) ....................................................................................15

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ......................................................................17, 23

*Sullivan v. Oracle Corp.*,
51 Cal. 4th 1191 (2011) .............................................................................................20

*Sutter Health v. Superior Court*,
227 Cal. App. 4th 1546 (2014) ....................................................................................22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).......................................................................................................3

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ......................................................................................18

*Vartanian v. VW Credit, Inc.*,
No. 2:11-cv-10776-SVW-RZ, 2012 WL 12326334 (C.D. Cal. Feb. 22, 2012) ......................19

*Vigil v. Muir Med. Grp. IPA, Inc.*,
84 Cal. App. 5th 197 (2022) ....................21

*Walden v. Fiore*,
571 U.S. 277 (2014)....................9, 11, 13, 14

*Wilson v. Rater8, LLC*,
No. 20-CV-1515-DMS-LL, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021)....................21

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................17

*Yamashita v. LG Chem, Ltd.*,
62 F.4th 496 (9th Cir. 2023) ....................14

**Statutes**

16 CCR § 1815.5(a) ....................11

18 U.S.C.A. § 2510, *et seq.* (Federal Wiretap Act ("ECPA")) .................... *passim*

18 U.S.C. § 2511. ....................17

AR Code 17-27-101 § 1.9(t) ....................11

Cal. Civ. Code § 56.05....................20, 21

Cal. Civ. Code § 56.10(a) (California Medical Information Act ("CMIA")).................... *passim*

Cal. Civ. Code § 56.36....................21

Cal. Civ. Code § 1798.100 *et seq*....................11

Cal. Pen. Code § 630....................20

Cal. Pen. Code § 631(California Invasion of Privacy Act ("CIPA").................... *passim*

DE Code. Title 24, § 3000 (11.2)....................11

Fed. R. Civ. P. 4(k)(1)(A) ....................4

Fed. R. Civ. P. 12(b) ....................1, 4

Health Insurance Portability and Accountability Act ("HIPAA")....................2, 3, 22

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Grow Care, Inc. ("Grow Care" or "Defendant") respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss ("Motion") Plaintiff Jane Doe 1 and Plaintiff Jane Doe 2's (collectively, "Plaintiffs") First Amended Class Action Complaint (the "Amended Complaint" or "AC").

## I. INTRODUCTION

Rather than respond to Defendant's initial motion to dismiss, Plaintiffs filed an Amended Complaint to try to address the deficiencies in their initial pleading. The Amended Complaint fails to do so. As to the allegations supporting their claims, Plaintiffs have not changed a thing. Each claim still fails to plausibly state a basis for relief, so as to these, Grow Care stands by its original arguments for dismissal. The only change Plaintiffs have made is to try to sidestep Grow Care's arguments for lack of personal jurisdiction by adding a series of allegations asserting that Grow Care, like any national website, complies with California privacy and telehealth laws by including state-specific disclosures on its website, and that California consumers, like consumers in many other states, sometimes look at Grow Care's website. But none of these allegations have any bearing on whether Grow Care purposefully directs its website towards California consumers, and thus Plaintiffs continue to fail to allege that jurisdiction is proper under Ninth Circuit law.

Plaintiffs continue to allege that Grow Care, a national platform for finding therapists, "integrated and embedded" website tools (the "Tools") from third-party service providers into its website, growtherapy.com (the "Website"). AC ¶¶ 1, 46. According to Plaintiffs, the Tools allowed third-party service providers to "unlawfully intercept" Plaintiffs' personal information "including information regarding the type of mental health treatment [they were] seeking, along with [] personally identifiable information such as [their] insurance member ID number[s], full legal name[s], phone number[s], and email address[s]." *Id.* ¶¶ 46, 50. Plaintiffs claim that the alleged disclosures violate privacy laws and statutes.

Plaintiffs' Amended Complaint also remains deficient in the following respects, each of which independently requires dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6):

*First*, Plaintiffs fail to demonstrate a basis for the Court to assert personal jurisdiction over

Grow Care, even with the addition of over thirty paragraphs of allegations in the Amended Complaint. Plaintiffs' allegations still concede that there is no general jurisdiction here, as Grow Care is neither incorporated in nor has its principal place of business in California. AC ¶ 52. As to specific jurisdiction, the new allegations describe the different instances where the Grow Care website includes state-specific legal disclosures (including California disclosures) and highlight the ways in which the website uses geolocation depending on the state (California or otherwise) where the browser accessing the website is located. But these allegations fail to support Plaintiffs' argument for specific jurisdiction because they are no different from the contacts that the website would have with many other states (if Plaintiffs had accessed it from those states), and thus Plaintiffs cannot meet their burden to show that their claims arise out of conduct that Grow Care ***purposefully directed at California***. In fact, Courts have rejected theories of personal jurisdiction that are materially indistinguishable from the ones advanced by Plaintiffs here.

*Second*, the Amended Complaint should also be dismissed because Plaintiffs fail to plausibly allege facts sufficient to satisfy the elements of each of their claims. As set forth below, the Complaint presents statutory causes of action that plainly do not apply to the alleged conduct. Nearly all of Plaintiffs' claims require Plaintiffs to establish that Grow Care invaded their privacy with respect to sensitive medical information or communications (or otherwise engaged in "highly offensive" conduct) but the Amended Complaint fails to plead any facts showing anything more than the routine use of standard website marketing tools in ways that are permissible under applicable legal and regulatory requirements, including HIPAA and CMIA. Further, the Amended Complaint pleads multiple claims under California law on behalf of the nationwide class, without offering any basis for the application of California law to out-of-state defendants for conduct that did not occur in California.

The Court should thus dismiss the Amended Complaint in its entirety, with prejudice.

## II. FACTUAL ALLEGATIONS

Grow Care is incorporated in Delaware and has its principal place of business in New York. AC ¶ 52. Grow Care operates Grow Therapy, a platform that allows clients seeking a therapist to make and manage appointments through the Website. *Id.* ¶ 60. Every page of the Website includes a conspicuous link to Grow Care's privacy policies and notice of privacy practices (the "Privacy

Notices”). *See* Grow Therapy, *Privacy Notice*, https://growtherapy.com/legal/privacy-policies/ and *Notice of Privacy Practices*, https://growtherapy.com/legal/notice-of-privacy-practices/. Among other things, the Privacy Notices disclose that Grow Care may “share, transmit, disclose, grant access to, make available, and provide personal information with and to third parties.” https://growtherapy.com/legal/privacy-policies/. The notice expressly states that Grow Care and its “third-party providers[] automatically collect information [users] provide to [Grow Care] and information about how [users] access and use” the Website. *Id*. And the Privacy Notices make clear that personal information may be used for treatment and health care operations purposes, as permitted under HIPAA. *See* https://growtherapy.com/legal/notice-of-privacy-practices/. Because Grow Care’s website is referenced throughout the Amended Complaint, including partial screenshots of pages that (in full) include the link to the Privacy Notices, *see, e.g.,* AC ¶¶ 106-113, it may be considered on a motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007).

Plaintiffs are California residents who allege that they voluntarily used the Website to book therapy appointments. AC ¶¶ 44-45, 48-49. The Amended Complaint does not allege whether Plaintiffs actually booked appointments for themselves or in fact attended these appointments. When using the Website, Plaintiffs claim that they disclosed their medical insurance providers, medical insurance member identification numbers, full legal names, phone numbers, and email addresses, as well as their preference for therapists who specialize in care for anxiety and depression. *Id*. According to Plaintiffs, Grow Care “integrated and embedded” Tools from the Datadog, Inc., Twilio, Inc., and Wingify Software Pvt. Ltd. (collectively, the “Third-Party Service Providers”) into the Website that allowed the Third-Party Service Providers to “unlawfully intercept” Plaintiffs’ “actions on the Website,” including “mouse movements,” “clicks, scrolls, typing, and other input data,” AC ¶¶ 61, 72, 89, 97. However, these allegations are based solely on a hypothetical user’s use of the Website as reflected in screenshots in the Amended Complaint. AC ¶¶ 106-117. Plaintiffs do not provide any allegations showing that these technologies were on the Website while they used it, or that they purportedly intercepted any of their data.

Based on these allegations, Plaintiffs allege five causes of action against Grow Care: violation of the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*; violation of the California Invasion of Privacy

Act, Cal. Pen. Code § 631; violation of the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56.10 ("CMIA"); Invasion of Privacy under California's Constitution; and Intrusion Upon Seclusion. AC ¶ 7. Plaintiffs seek to represent a nationwide class to each of their claims other than their claim under CMIA, *id.* ¶ 122, in which they seek to represent a subclass consisting of class members whose personal information was improperly disclosed to Third-Party Service Providers "as a result of using the Website while located in California." *Id.* at ¶ 123.

## III. LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facts alleged must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001); *see also Iqbal*, 556 U.S. at 678 (pleading cannot rely on "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement'").

## IV. ARGUMENT

### A. The Court Lacks Personal Jurisdiction Over Grow Care.

"Exercises of personal jurisdiction" are limited "by due process constraints on the assertion of adjudicatory authority." *Daimler AG v. Bauman*, 571 U.S. 117, 121–122 (2014). Federal courts "follow state law in determining the bounds of their jurisdiction over persons." *Id.* at 125 (citing Fed. R. Civ. P. 4(k)(1)(A)). Thus, federal due process and the law of the forum State set the limits for this Court's exercise of personal jurisdiction—a single inquiry here, since "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Id.* at 117. Plaintiffs bear the burden of establishing that jurisdiction exists. *See*, *e.g.*, *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

Based on the allegations in the Amended Complaint, there is neither general nor specific personal jurisdiction over Grow Care. *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011). This Court lacks general jurisdiction over Grow Care because California is not Grow Care's

place of incorporation or principal place of business. And this Court lacks specific jurisdiction over Grow Care because Plaintiffs' claims do not arise out of or relate to acts that Grow Care purposefully directed toward California, and exercising specific jurisdiction would not be reasonable under due process principles. The Amended Complaint should therefore be dismissed for lack of personal jurisdiction.

**1. There Is No General Jurisdiction Over Grow Care in California.**

General jurisdiction exists only where a defendant is "essentially at home." *Goodyear*, 564 U.S. at 919. For "a corporation, the place of incorporation and principal place of business" are the paradigmatic forums. *Daimler AG*, 571 U.S. at 137. Otherwise, to be subject to general jurisdiction, a corporation's contacts must be "so 'continuous and systematic' as to render [them] essentially at home in the forum State," which could only occur in an "exceptional case." *Id.* at 139 & n.19.

There is no basis to find general jurisdiction over Grow Care. As Plaintiffs allege, Grow Care is incorporated in Delaware and has its principal place of business in New York. AC ¶ 52. Moreover, Plaintiffs only allege that Grow Care is registered to conduct business in California—certainly, nothing to make Defendant "essentially at home" in California. *See id.* ¶ 11. This falls well short of the "exacting standard" for general jurisdiction outside the place of incorporation and principal place of business. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004); *see also Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986) (collecting cases denying general jurisdiction).

**2. There Is No Specific Jurisdiction Over Grow Care in California.**

"A defendant is subject to specific personal jurisdiction in the forum state if: (1) the defendant performed an act or consummated a transaction by which it purposely directed its activity toward the forum state; (2) the claims arose out of defendant's forum-related activities; and (3) the exercise of personal jurisdiction is reasonable." *San Diego Cty. Credit Union v. Citizens Equity First Credit Union*, 60 F.4th 481, 502 (9th Cir.), *opinion amended and superseded on denial of reh'g*, 65 F.4th 1012 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 190 (2023); *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022). "'If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law.'" *AMA Multimedia, LLC v. Wanat*, 970

F.3d 1201, 1208 (9th Cir. 2020) (citation omitted). None of the three requirements are satisfied here.

**a. There is No Purposeful Direction Toward California.**

To satisfy the first requirement that Defendant purposefully directed its alleged action to the forum state, Plaintiffs must show that Defendant: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803. "All three parts of the test must be satisfied." *Id.* at 805. Plaintiffs cannot meet their burden.

**i. None of Grow Care's Alleged Acts Were "Expressly Aimed" at California.**

The Ninth Circuit has made clear that a "passive" website that simply hosts information "does not qualify as purposeful activity invoking the benefits and protections" of the law of that state. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 420 (9th Cir. 1997). Likewise, even an interactive website that allows a party to watch media or purchase goods that occur in California from a national website, without more, is not enough for specific jurisdiction. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1092 (9th Cir. 2023). To demonstrate "express aiming" in such circumstances, the complaint's allegations must show that an operator of "a website 'with national viewership and scope appeals to, and profits from, an audience in a *particular state*.'" *AMA Multimedia*, 970 F.3d at 1210 (quoting *Mavrix*, 647 F.3d at 1231) (emphasis added). Thus, if the website itself is the "*only* jurisdictional contact" relevant to a specific jurisdiction analysis, the analysis "turns on whether the site had a forum-specific focus or the defendant exhibited an intent to cultivate an audience in the forum." *Herbal Brands, Inc.*, 72 F.4th at 1092 (emphasis in original).

A "forum-specific" focus or intent to cultivate a forum-specific audience requires a showing that the website specifically "targeted California users through the website's content." *AMA Multimedia*, 970 F.3d at 1211 n.7. A plaintiff cannot demonstrate a "forum-specific focus" by alleging that a national website uses geolocation software to identify where a visitor is accessing a website from or that it allows visitors, via a drop-down menu or selection screen, to select content from a specific state. *Doctor's Fin. Network, Inc. v. DrDisabilityQuotes.com, LLC*, 2022 WL 19404853, at *5 (C.D. Cal. Mar. 3, 2022) ("[T]he Court is not convinced that allowing a user to select which state

it would like to search for insurance products is enough to confer specific jurisdiction in a state. . . ."); *Handsome Music, LLC v. Etoro USA LLC*, 2020 WL 8455111, at *9 (C.D. Cal. Dec. 17, 2020) ("Plaintiff proffers no evidence to show Defendant posts and profits from California-specific advertisements on its website."). Indeed, courts have recognized that such allegations, if deemed sufficient, would impermissibly "make Defendant subject to specific jurisdiction in every state it allows its users to choose from" on the website. *Doctor's Fin. Network*, 2022 WL 19404853, at *5-6 (no specific jurisdiction where "Defendant has done nothing to encourage California residents to visit its website over any other state's visitors").

The same principle applies to allegations that a website was purportedly collecting analytic information about its visitor's locations and website use—a plaintiff cannot argue that website is "express[ly] aim[ed]" at a specific location where, like here, the purported "harm would have befallen the plaintiff[s] no matter [their] location." *Sacco v. Mouseflow, Inc.*, 2022 WL 4663361, at *4-5 (E.D. Cal. Sept. 30, 2022) (dismissing CIPA claims for lack of personal jurisdiction). Because the alleged "recording of Plaintiff[s'] visit to [the Website] and the collection of [their] [data] would have occurred no matter the state Plaintiff[s] w[ere] in. Defendant did nothing specifically directed at California or California residents to tether [its Website] to this forum." *Id.* at *5; *see also Doe v. FullStory, Inc.*, 2024 WL 188101, at *11 (N.D. Cal. Jan. 17, 2024) (dismissing privacy claims where "something more" was needed in assessing whether a data processing company directed its activity toward California); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 513 (C.D. Cal. 2021) (operation of a commercial website accessible to California residents was not conduct expressly aimed at California); *Martin v. Outdoor Network LLC*, 2024 WL 661173, at *5 (C.D. Cal. Jan. 31, 2024) (no express aiming when "the website is the sole jurisdictional contact with Plaintiff's claims"); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 868 (S.D. Cal. 2023) (no personal jurisdiction when complaint "fails to include a single allegation detailing how Defendant's 'interactive website' is targeted at California"); *Kauffman v. Home Depot, Inc.*, 2024 WL 221434, at *1 (S.D. Cal. Jan. 19, 2024) (no personal jurisdiction based on data tracking through defendant's website).

*Massie v. General Motors Co*. is instructive here. 2021 WL 2142728 (E.D. Cal. May 26, 2021). There, California residents brought a putative class action asserting CIPA and Federal Wiretap Act

claims based on the alleged collection of their website behavior, "email addresses, IP addresses, and locations." *Id.* at *1. The court found that the website there, like here, "lack[ed] a forum specific focus as the market for [Defendant's platform] is nationwide." *Id.* at *5. And, like here, the alleged website technology in that case was not "designed specifically to target and attract Californians" to the Website or its services; the "software at issue [allegedly] records . . . website sessions from users nationwide; no geographic criteria affect which website sessions the software captures." *Id.* at *4. The court thus held that there was no basis for personal jurisdiction. *Id.*; *see also Moledina v. Marriott Int'l, Inc*. 635 F. Supp. 3d 941, 948 (C.D. Cal. 2022) (same).

Here, Plaintiffs' Amended Complaint adds new allegations purporting to detail the workings of Grow Care website, but these allegations fail to show that the website operates differently than any other national website, let alone that Grow Care has purposefully aiming its website activities at California. As an initial matter, Plaintiffs' allegation that Grow Care is registered to conduct business in California has nothing to do with their claim. *Martin,* 2024 WL 661173 at *5 ("Insofar as Plaintiff suggests that Defendant's *overall sales* to California establish express aiming, that argument is unavailing because a sale is not the intentional act from which Plaintiff's claims here arose.") (emphasis in original). And importantly, the only jurisdictional contact Plaintiffs allege relevant to their specific claims is *their* access of the Website—which they do not even allege occurred in California. *See*, *e.g.*, AC ¶¶ 45, 49.

Because Plaintiffs cannot allege any specific California contacts relevant to ***their*** actual claims, their core factual allegations—unchanged in the Amended Complaint—are that the Grow Care website purported targeted California because, when Plaintiffs booked therapy appointments using Grow Care's website, the website allegedly aided third-parties in intercepting Plaintiffs' communications, personally identifiable information ("PII"), and protected health information ("PHI"). AC ¶¶ 119-121. But there still are no specific allegations that Grow Care specifically targeted California with its efforts to collect user data. To the contrary, as in their original Complaint, Plaintiffs allege a ***nationwide*** practice of collecting and disclosing such data, and their complaint implicitly concedes that California website visitors were no more of a part of this alleged practice than any other state. *See* AC ¶¶ 1-2. Such activity still cannot be said to be "expressly aimed" at California. "Express aiming requires more

than the defendant's awareness that the plaintiff it is alleged to have harmed resides in or has strong ties to the forum, because 'the plaintiff cannot be the only link between the defendant and the forum." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 980 (9th Cir. 2021) (citation omitted).

The Amended Complaint fails to cure this deficiency. Instead, it adds a labored description of how the Grow Care website, like any national website, will generally work so that it can interact with browsers in different states and comply with state law. Specifically, Plaintiffs now allege that Grow Care directed its activities at California by (1) collecting geo-location data via the Website to "tailor advertisements and increase user engagement" in California, AC ¶ 13, and (2) "cultivating an audience in California" by including a drop-down menu of states that includes California (AC ¶¶ 26-27) and complying with California-specific laws, such as by including CCPA disclosures in its Privacy Policy, AC ¶¶ 18-19, and contracting with California-licensed mental health providers, AC ¶ 25. These new allegations fail to provide a sufficient basis for specific personal jurisdiction over Grow Care.

First, Plaintiffs' new allegations incorrectly insist that express aiming can be inferred because Grow Care "collect[s] Website user activity and geolocation data from Website users residing in California in order to 'tailor advertisements and content to increase user engagement' in California." AC ¶ 13. These allegations do not show *purposeful* direction toward California on the part of Grow Care. *See AMA Multimedia*, 970 F.3d at 1210. In *AMA Multimedia*, the Ninth Circuit considered in part whether the defendant, a citizen and resident of Poland and an owner of the adult video website "ePorner," expressly aimed ePorner at the United States through ePorner's use of "geotargeted advertisements and the purported corresponding U.S. revenue." 970 F.3d at 1210. The Court found that this tailoring "[did] not establish that [Defendant] *expressly aimed* ePorner at the United States," observing that "ePorner's geo-located advertisements, provided by a third-party advertising company, . . . are always directed at the forum," whether in the United States or elsewhere. *Id.* at 1211 (emphasis altered from original). "If such geo-located advertisements constituted express aiming, ePorner could be said to expressly aim at any forum in which a user views the website," which would "impermissibly allow[] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *AMA Multimedia*, 970 F. 3d at 1211 (quoting *Walden v. Fiore*, 571 U.S. 277, 289 (2014)).

Plaintiffs' reliance on the out-of-Circuit ruling in *Rancourt v. Meredith Corp.*, 2024 WL 381344 (D. Mass. Feb. 1, 2024), is also misplaced. *See* AC ¶ 13. In *Rancourt*, the defendant derived revenue solely from advertising activities on the mobile application at issue, and the plaintiff alleged facts—discovered in the course of an analysis conducted by a private research company—regarding the revenue the defendant derived from advertising activities in the specific forum. *Rancourt*, 2024 WL 381344 at *2, 8. No such allegations exist here. *See generally* AC ¶¶ 9-42. And more recent decisions have specifically distinguished *Rancourt* by finding that, in most cases, location data is not collected because a business "deliberately singled out" a jurisdiction, but because a user in that jurisdiction is using the service. *See Egan v. X-Mode Social, Inc.*, 2024 WL 2701967, at *5 (D. Mass. May 24, 2024) (distinguishing *Rancourt* where website and app could be accessed by "anyone with an internet connection" in any forum).

Plaintiffs further argue that Defendant has directed its activities at California because: (1) the Grow Care website includes a drop-down menu that includes California; (2) the Website includes California-specific privacy disclosures; and (3) Grow Care contracted with California-licensed mental health providers in order to provide therapy services to users in California. AC ¶¶ 27-28, 41. But Plaintiffs cannot establish personal jurisdiction over a foreign company simply by showing the foreign company's *legal disclosures* reference that forum's laws (*see* AC ¶¶ 24-25)—the question is whether the website content itself is targeting consumers in that form. Indeed, a "forum-specific" focus or intent to cultivate a forum-specific audience requires a showing that the website *specifically* "targeted California users through the website's *content*." *AMA Multimedia*, 970 F.3d at 1211 n.7 (emphasis added). Plaintiffs have not made such a showing.

First, Plaintiffs' allegations regarding the drop-down menu go nowhere. As discussed above, courts have held that a plaintiff cannot demonstrate a "forum-specific focus" by alleging that the website allows visitors, via a drop-down menu or selection screen, to select content from a specific state. *See supra* at p. 6-7. And the drop-down menu in which Plaintiffs allege that "one of the states that Defendant provides as an option" to choose is California includes all fifty states and the District of Columbia. AC ¶ 27. Indeed, courts have recognized that such allegations, if accepted as sufficient for specific jurisdiction, would impermissibly "make Defendant subject to specific jurisdiction in

every state it allows its users to choose from" on the website. *Doctor's Fin. Network*, 2022 WL 19404853, at *6 (no specific jurisdiction where "Defendant has done nothing to encourage California residents to visit its website over any other state's visitors").

Second, providing CCPA-compliant disclosures and contracting with California-licensed therapists are bare minimum acts required by law for Grow Care to operate in California, not the specific, affirmative actions required to show California was the "focal point" of the website "and of the harm suffered." *See AMA Multimedia,* 970 F.3d at 1212 (quoting *Walden v. Fiore*, 571 U.S. 277, 287 (2014)). Starting with the disclosures, the CCPA created broad requirements for websites related to specific disclosures about the sharing of user data. *See* Cal. Civ. Code § 1798.100 *et seq*. Grow Care should not be penalized for its compliance with California laws requiring these disclosures, and it would be an unfortunate (and unwarranted) effect if this compliance measure foreclosed Grow Care and other companies from being able to operate websites in California without this risk. Including required disclosures on Grow's website does not equate to *specifically* directing its activities at California more than any other state, especially when Grow Care's Privacy Notices also highlight additional privacy rights specific to residents of 14 other states. *See Martin*, 2024 WL 661173, at *4 (no jurisdiction where website did not show "some prioritization of the forum state, some differentiation of the forum state from other locations, or some focused dedication to the forum state").

The same is true with respect to Grow Care's alleged contracting with California mental health providers. Plaintiffs allege that under 16 CCR § 1815.5(a), which requires that mental health professionals providing telemedicine therapy services to California residents be licensed in California, Grow Care must have had to contract with California-licensed mental health providers in order to provide services to California patients, thereby further directing its activities at the state. AC ¶¶ 30-32. By Plaintiffs' logic, Grow Care would also have contracted with providers, and thus be subject to specific jurisdiction in every state with similar telemedicine laws.[1] These acts do not add up to "express aiming" at California. *See Doctor's Fin. Network*, 2022 WL 19404853, at *6 (finding that express aiming was not met where Defendant advertised that it was licensed in California, had

[1] *See, e.g.*, AR Code 17-27-101 § 1.9(t) (Arkansas); DE Code. Title 24, § 3000 (11.2) (Delaware); 14 CRR-NY 596.6 (New York) (all requiring that mental health practitioners practicing telemedicine be licensed in the State).

registered in every state in order to offer insurance products, and because Defendant "treat[ed] visitors in California the same as it does those in Florida, Georgia, Rhode Island, and the rest of the remaining states.").

Plaintiffs have "thus failed to meet [their] burden to show that [Grow Care] purposefully directed its conduct at California," and Grow Care "is not subject to this Court's personal jurisdiction." *Moledina*, 635 F. Supp. 3d at 950.

**ii. Grow Care's Alleged Actions Did Not Cause Harm That Grow Care Knew Was Likely to be Suffered in California.**

Similarly, Plaintiffs cannot show that Grow Care's alleged conduct caused them an injury that Grow Care knew was "likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803. Again, the only connection between Grow Care's alleged conduct and California is Plaintiffs' claim that they are California residents. As the Ninth Circuit has explained, even where a defendant's "intentional act eventually caused harm to [the plaintiffs] in California, and [the defendant] may have known that [the plaintiffs] lived in California," "this does not confer jurisdiction" where the defendant did not aim its acts at the forum state. *Id*. at 807; *see also Moledina,* 635 F. Supp. 3d at 949 (the mere fact that defendant "knew, or at least reasonably should have known, [they] w[ere] calling from California … during the time of the call" did not confer specific jurisdiction). Plaintiffs therefore cannot show that Grow Care knew harm was likely to be suffered by Plaintiffs in California.

**b. Plaintiffs' Claims Do Not Arise Out of or Relate To Grow Care's Forum-Related Activities.**

Moreover, Plaintiffs' claims do not arise out of or relate to Grow Care's contacts with California. This requirement "'depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum [State] and is therefore subject to the [State's] regulation.'" *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citations omitted). "There must be 'a connection between the forum and the specific claims at issue.'" *Rivelli v. Hemm*, 67 Cal. App. 5th 380, 399 (2021) (quoting *Bristol-Myers Squibb*, 582 U.S. 255, 265 (2017)). "If the operative facts of the allegations of the complaint do not relate to the [defendant's] contacts in this state, then the cause of action does not arise from that contact such that California courts may

exercise specific jurisdiction." *In re Auto. Antitrust Cases I & II*, 135 Cal. App. 4th 100, 116 (2005).

Again, Plaintiffs deliberately and unilaterally accessed the Website. Their claim does not "arise out of contacts that the 'defendant *himself* create[d] with the forum State." *Walden*, 571 U.S. at 284. Nothing about Plaintiffs' allegations relating to the data allegedly collected from the Website, of Grow Care's purported use of third-party Tools on the Website, is alleged to have anything to do with Grow Care's purported contacts with California. As explained *supra*, the Grow Care Website is accessible from anywhere. Whether or not Plaintiffs were in California when they visited the Website, their location at the time of access says nothing about Grow Care's activities within that city, state, or country. *See, e.g., id*. at 290 (where alleged injury could have occurred in "California, Mississippi, or wherever else [petitioner] might have traveled," the "effects of petitioner's conduct [were not] connected to the forum State in a way that makes those effects a proper basis for jurisdiction"); *Ayer v. White*, 2022 WL 657502, at *5 (C.D. Cal. Mar. 4, 2022) ("Plaintiffs' injuries do not aid their jurisdictional argument because Plaintiffs would have suffered the same loss in any state they happened to be in at the time Defendants committed their alleged misconduct in Texas."). If the state of residence of an internet-user alone sufficed to confer jurisdiction, it would result in absurd results where Grow Care could be sued in any state just because a plaintiff accessed the Website from there. That rule would not "adequately protect defendants foreign to a forum." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court,* 592 U.S. 351, 362 (2021); *see Kauffman*, 2024 WL 221434, at *3 (court rejected plaintiff's argument that the data capture played a "critical part" in Home Depot's "coordinated efforts to maximize sales revenue in California").

Plaintiffs' attempts to bolster their arguments in the Amended Complaint with allegations of Defendant's contacts with California-licensed medical providers and of substantial website traffic from California residents also fall flat. In alleging that their claims relate to Defendant's California contacts, Plaintiffs point to the fact that Defendant has contracted with California-licensed mental health providers in order to comply with state telemedicine laws and provide services to California residents. AC ¶ 34. But Plaintiffs must plead specific facts showing how the "instant litigation relates to [the California contact]." *LNS Enters. LLC*, 22 F.4th at 864.

Here, Plaintiffs allege no facts in the *instant litigation* showing that their claims arise out of

the mental health services they received from the California-licensed providers contracted by Grow Care. Instead, Plaintiffs construct a tenuous chain of unsubstantiated inferences to allege that if Defendant had not contracted with California-licensed providers, several steps later, Defendant would not have allegedly disclosed Plaintiffs' PHI and PII to third parties. *See* AC ¶ 34. But this falls short of what courts require to find that a plaintiff's injuries arose out of a defendant's forum contacts. *See Yamashita v. LG Chem, Ltd.*, 62 F.4th 496 (9th Cir. 2023). For example, in *Yamashita*, the Ninth Circuit held that a Hawaii court lacked personal jurisdiction over a Korean company and its U.S. subsidiary based in Delaware for a product liability claim arising out of an allegedly defective lithium-ion battery. *Id.* at 506. Even though both defendants shipped lithium-ion batteries through the port of Honolulu, and the Korean parent company had "significant involvement in the sale of residential solar batteries in Hawaii," the Court held that it lacked specific jurisdiction over either defendant because the plaintiff had not shown that his injuries "arose out of any [forum] contacts" or that his claim was sufficiently "related" to those contacts. *Id.* at 501, 506. Here, too, the Court should find that Plaintiffs have not shown that Defendant's purported collection of user data from its Website, or the purported use of third-party Tools on its Website, arose out of Defendant's contacts with California therapists, and thus, the Court lacks personal jurisdiction over Grow Care with respect to these claims.

As a last-ditch effort, Plaintiffs allege that their claims arise out of and relate to Defendant's contacts with California because Defendant has cultivated a large consumer base in California. AC ¶ 35. In furtherance of these allegations, Plaintiffs cite Google Trends data which merely indicates that California residents have independently shown a higher interest in searching "Grow Therapy" relative to residents of some, but not all, other states. *See* AC ¶ 40. But there are no allegations that Grow Care's purported efforts to build its consumer base were any different in California than they were in any other state, or that its purported data-collecting practices were any different in California. *See Walden*, 571 U.S. at 290 (where alleged injury could have occurred in "Mississippi, or wherever else [petitioner] might have traveled," the "effects of petitioner's conduct [were not] connected to the forum State in a way that makes those effects a proper basis for jurisdiction"); *Egan*, 2024 WL 2701967, at *4 ("A website or app's forum-state collection of location data does not automatically relate to claims arising from the out-of-state handling and disclosure of that information.").

Plaintiffs cannot establish how their claims, which relate entirely to alleged third-party disclosures of the information they shared with Grow Care, arise out of or relate to the limited contacts they allege that Grow Care's website has with California. Nothing about these claims has anything to do with the fact that Grow Care's website, like any national website, allows California visitors to access the website or provides state-specific disclosures to those visitors. Because the only "relation" between Plaintiffs' claims and California is based on ***their own*** contacts with California—not on any of ***Grow Care's*** California activities—they fail to allege that their specific claims arise from or relate to Grow Care's contacts with California.

**c. Subjecting Grow Care to Jurisdiction in California Would Be Unreasonable.**

Plaintiffs' Amended Complaint should be dismissed for the independent reason "that the exercise of jurisdiction would be unreasonable and therefore violate due process." *Ayla*, 11 F.4th at 983–84. This inquiry is "guided by seven factors: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Id.* (citation and quotation omitted). These factors weigh against jurisdiction over Grow Care.

First, the inquiry concerning the extent of a defendant's purposeful interjection is "analogous to the purposeful direction" analysis. *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988). The operation of an interactive website does not rise to the level of purposeful interjection into the forum state's affairs. *See supra* at 5-6 (Ninth Circuit precedent makes clear that national websites often are not subject to specific jurisdiction). Accordingly, this factor weighs against exercising jurisdiction. *See Martin*, 2024 WL 661173, at *5 (dismissing case for lack of personal jurisdiction).

Second, litigating in California would impose an unreasonable burden on Grow Care. Grow Care is a Delaware corporation with its principal place of business located in New York. It should not be required to litigate a case across the country where Plaintiffs have not alleged anything other than

their California residencies. Thus, this factor weighs against exercising jurisdiction.

Third, claims against Grow Care should be heard by a court where Grow Care is a corporate citizen when, as here, the claims do not arise out of its contacts with any other State. That is the essence of having forums where businesses are fundamentally at home and can thus have any claims heard against them. Therefore, this factor does not support exercising jurisdiction.

Fourth, although some of Plaintiffs' claims are based on California law, there is otherwise no relationship to California except that Plaintiffs live here, which does not favor jurisdiction.

Fifth, the most efficient judicial resolution of the controversy would not be in California. Any relevant records relating to Plaintiffs' allegations would be outside California. Moreover, common class questions such as those relating to Grow Care's policies and procedures, its Website and the services it provides, its relationships with third party service providers, and so forth, would be answered by witnesses and documents outside California. *See Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995) (the location of the evidence and witnesses is an important consideration in determining jurisdiction). Therefore, this factor does not favor jurisdiction.

Sixth, it is not unreasonably inconvenient to require Plaintiffs to litigate their claim in another forum, when none of the relevant information, documents, or witnesses (besides Plaintiffs themselves) are located in California.

Seventh, there exist multiple alternative forums for the dispute based on Plaintiffs' own allegations, so this factor also weighs against exercising jurisdiction.

On balance, the seven factors favor a finding that the exercise of jurisdiction over Grow Care would be unreasonable and therefore violate due process.

### B. Plaintiffs' Amended Complaint Should Be Dismissed Because It Fails to Plead a Plausible Claim for Relief

Each of Plaintiffs' claims should be dismissed because (1) Plaintiffs fail to plead essential elements of those claims, (2) the statutes are plainly inapplicable to the conduct alleged here, or (3) they seek relief that is unavailable or impermissible.

### 1. Plaintiffs' Claims Under the Electronic Communications Privacy Act ("ECPA") and the California Invasion of Privacy Act ("CIPA") (Counts I and II) (the "Wiretap Claims") Must Be Dismissed.

Plaintiffs bring a claim under Title I of the ECPA, known as the Wiretap Act., AC ¶ 146, which is violated when any person "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511. Plaintiffs also plead a claim under CIPA, California's analogue to the Wiretap Act, which likewise makes it unlawful to "intentionally tap[], or make[] any unauthorized connection … or [] willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication." Cal. Pen. Code § 631(a).

As an initial matter, Plaintiffs' ECPA claim should be dismissed because it is a one-party consent statute, and Plaintiffs' own allegations show that Grow Care consented to the purported interception by the third-party Tools. 18 U.S.C. § 2511(2)(d) (no liability where "one of the parties to the communication has given prior consent" to interception); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014) (ECPA "only requires one party to the communication to consent to an interception"). Because Plaintiffs' allegations, if accepted as true, claim that Grow Care was voluntarily using the Tools, liability under the ECPA is precluded. *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017), *aff'd*, 745 Fed. Appx. 8 (9th Cir. 2018) ("consent of one of the parties to the communication [is] sufficient to preclude liability under the Wiretap Act") (quotations omitted); *Licea v. Am. Eagle Outfitters, Inc.*, 2023 WL 2469630, at *6 (C.D. Cal. Mar. 7, 2023).

Although there is a crime-tort exception to this provision under 18 U.S.C. § 2511(2)(d), Plaintiffs have failed to allege that Grow Care intended to commit a tort here, let alone that that "***the primary motivation or a determining factor*** in the [defendant's] actions has been to injure plaintiffs tortiously." *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118, at *10 (N.D. Cal. 2023) (emphasis added) (citation omitted). Plaintiffs' conclusory allegation that the Defendant used the Tools "for the purpose of committing a tortious or criminal act" in insufficient to plausibly allege that Grow Care implemented the Tools with the ***primary motivation*** of committing torts on Website visitors. To the

contrary, the Amended Complaint expressly (and repeatedly) states that the purpose of the Tools is to enhance Grow Care's "marketing," advertising," and "analytics efforts," AC ¶¶ 62, 80, 83, 84-85, 88, 92, 147, precluding application of the crime-tort exception. *See Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021) (citation omitted) (crime-tort exception does not apply to alleged interception by third-party internet applications when purpose is "plainly . . . to make money"). For this reason alone, Plaintiffs' claim under ECPA must be dismissed.

Plaintiffs' Wiretap Claims independently fail because the Amended Complaint fails to plead the elements of a violation under ECPA or CIPA. Both statutes require a plaintiff to allege an (1) intentional (2) interception of (3) the contents of a communication. *See* 18 U.S.C. §§ 2510(1), (4), (8); Cal. Pen. Code § 631; *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.") (citations omitted). The Wiretap Act defines "contents" as "information concerning the substance, purport, or meaning of that communication." 18 U.S.C.A. § 2510(8). "The contents of a communication under CIPA and the [] Wiretap Act are the same." *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021).

First, Plaintiffs fail to plead allegations that any interception of Plaintiffs' data by third parties through the Tools was intentional. To plead intent, Plaintiffs must plead facts showing that Grow Care "acted consciously and deliberately" in supposedly allowing third parties to intercept communications. *United States v. Christensen*, 828 F.3d 763, 775 (9th Cir. 2015). Plaintiffs' allegations here directly undermine any inference of intent, as the Amended Complaint alleges that the Tools are designed to record "user's experiences on the [Website]" or "web behavior," such as "mouse movements, scrolls, and clicks" and "checkout button click, tap, and more." *See* AC ¶¶ 63, 97, 102-03. Indeed, the Amended Complaint expressly states that "Defendant has purposefully integrated and embedded Datadog's, Twilio's, and Wingify's software into its Website to track patients' *actions* on the Website." AC ¶ 60 (emphasis added); *see* ¶ 63 (alleging Datadog's Tool "[a]utomatically collect[s] … every … action during a user's session") ¶ 82; (alleging Twilio's Tool captures "a user's interaction"); ¶ 94 (alleging Wingify's Tool collects "website engagement or browsing and behavior data").

Plaintiffs have alleged only an intent to record browsing activity, which is non-actionable and separate from "communications." *Mikulsky v. Bloomingdale's LLC*, 2024 WL 3091395, at *3 (S.D.

Cal. May 14, 2024) (citation omitted) (browsing activity such as "clicks, mouse movements, scrolling," and "key presses" are "record data, not 'communications'"). Thus, the Amended Complaint fails "to set forth specific factual circumstances that make plausible [Grow Care's] intent to record a confidential communication." *Vartanian v. VW Credit, Inc.*, 2012 WL 12326334, at *2 (C.D. Cal. Feb. 22, 2012).

Second, Plaintiffs fail to allege that any of the Tools alleged in the Amended Complaint acted to eavesdrop or intercept the content of their communications. In fact, as another district court recently held in dismissing CIPA claims, Plaintiffs own allegations show that Plaintiffs' "browsers were communicating ***directly*** with the alleged eavesdropper because the users' browsers were sending [] requests directly to [third party's] servers." *Cole v. Quest Diagnostics, Inc.*, 2025 WL 88703, at *2 (D.N.J. Jan. 14, 2025). Under these allegations, Plaintiffs' browsers were communicating directly with the purported eavesdroppers, and "'there [was] no need for the eavesdropper to acquire that information from transmissions to which they are not a party.'" *Id.* at *3 (quoting *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 140-41 (3d Cir. 2015)) (cleaned up). Accordingly, Plaintiffs' allegations foreclose their argument that the Tools were intercepting the content of communications sent to some other intended party. *See id.* (granting motion for reconsideration and holding there was no CIPA liability for use of third party tools).

Third, based on Plaintiffs' alleged voluntary disclosure of personal information on the Website, Plaintiffs cannot allege that any of their information was "intercepted" via the Tools. Plaintiffs' Amended Complaint makes clear that they voluntarily disclosed their medical insurance providers, medical insurance member identification numbers, full legal names, phone numbers, and email addresses, as well as their therapist preferences to Grow Care, and expected Grow Care to use this information. AC ¶¶ 45, 49. Plaintiffs also agreed, pursuant to Grow Care's Privacy Notices, that their information could be used for the purposes of treatment, payment, and health care operations. *See supra* at 2-3. Such allegations undermine claims that their personal information was improperly intercepted by third parties through their use of the Tools. *See Kurowski v. Rush Sys. for Health*, 2023 WL 2349606, at *4 (N.D. Ill. Mar. 3, 2023) ("The court concludes that [defendant] . . . was the intended recipient of the allegedly intercepted communications here. [Defendant] is therefore a party to those

communications and cannot be liable under the Wiretap Act for its alleged interception of them, if such an interception even occurred.").

Fourth, Plaintiffs' CIPA claim fails to the extent it is not limited to the subclass of putative class members who were located in California during the alleged disclosures. California law carries a presumption against extraterritorial application, meaning courts "presume the Legislature did not intend a statute to be operative, with respect to occurrences outside the state." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) (internal quotations omitted); *see* Cal. Penal Code § 630 (The purpose of CIPA is to "to protect the right of privacy of the people of *this state*.") (emphasis added). The Amended Complaint establishes no basis for out-of-state plaintiffs to maintain a CIPA claim against Grow Care, a Delaware Corporation with its principal place of business in New York because the Amended Complaint does not and cannot allege that any wrongful conduct occurred in California. AC ¶ 52. *See Hammerling v. Google LLC*, 2022 WL 17365255, *11 (N.D. Cal. Dec. 1, 2022), *aff'd*, 2024 WL 937247 (9th Cir. Mar. 5, 2024) (dismissing CIPA claim because plaintiff failed to allege that the conduct at issue took place in California). Thus, the CIPA claim must be dismissed as to putative class members who did not access the Website in California.

For these reasons, the Wiretap Claims should be dismissed.

**2. Plaintiffs' Claim for Violation of the California Confidentiality of Medical Information Act ("CMIA") (Count III) Should Be Dismissed.**

Plaintiffs allege a claim for a violation of CMIA under Section 56.10 which states that "[a] provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient . . . without first obtaining an authorization." Cal. Civ. Code § 56.10(a). The CMIA claim is inadequately pled and must be dismissed.

First, Plaintiffs fail to plead that they are *patients* of Grow Care, let alone that any of their *patient* medical information was transmitted to third parties. If they are not patients, they do not have standing to bring a CMIA claim. Plaintiffs do not allege, for example, that they "received health care services from a provider of health care," nor is it clear that they could do so. *See* Cal Civ. Code §56.05(m). They simply allege that they went through Grow Therapy's booking flow. Moreover, medical information under CMIA does not encompass "just any patient-related information."

*Eisenhower Med. Ctr. v. Superior Court*, 172 Cal. Rptr. 3d 165, 169 (Ct. App. 2014). Rather, medical information only includes individually identifiable information regarding a patient's medical history, mental or physical condition, or treatment. Cal. Civ. Code § 56.05(j). Although Plaintiffs allege that the information they purportedly disclosed in order to book a session (name, insurance information, preference for a provider's specialization) is personally identifying, none of that information reveals that Plaintiffs actually received the purported services they booked, let alone anything about their *patient* medical histories, mental or physical conditions, or treatments. If anything, it reveals only that Plaintiffs *scheduled* appointments with certain types of therapists—but under CMIA, that is not information showing that they actually "received health care services from a provider of health care." *See* Cal. Civ. Code §56.05(m); *Wilson v. Rater8, LLC*, 2021 WL 4865930, at *5 (S.D. Cal. Oct. 18, 2021) (citation omitted) (dismissing CMIA claim where, "[b]eyond the conclusory use of the words 'treating' and 'treatment,' [plaintiff] does not allege facts that would allow the Court to infer that he received medical treatment during that examination); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123–24, 1128 (S.D. Cal. 2023) (web browsing activity related to plaintiffs' "search for medical specialists" is not medical information covered by CMIA).

Second, Plaintiffs fail to plead a "release" of protected information sufficient to satisfy the remedial provisions of CMIA, Cal. Civ. Code § 56.36. *See* AC ¶¶ 58-59. CMIA only provides for remedies where information is actually released to, or viewed by, a third party. *Vigil v. Muir Med. Grp. IPA, Inc.*, 84 Cal. App. 5th 197, 215 (2022). Here, Plaintiffs simply allege that the purported Website tools can intercept data provided on the Website, but not that any of their information was actually released to and viewed by a third-party. *Barbour v. John Muir Health*, 2023 WL 2618967, at *7-8 (Cal. Super. Ct. Jan. 5, 2023) (finding that "the information may be collected, analyzed, and used … all through the use of computers, without any human actually laying eyes on it"). Accordingly, Plaintiffs cannot seek any relief under the remedial provisions of CMIA. *Vigil*, 84 Cal. App. 5th at 215; *see also Regents of Univ. of Cal. v. Superior Court*, 220 Cal. App. 4th 549, 564 (2013) ("Section 56.36 . . . requires pleading and proof that confidential information has been released in violation of CMIA to bring a private cause of action for nominal and/or actual damages").

Third, a plaintiff pleading a CMIA claim must allege facts showing that the defendant

affirmatively intended to disclose the plaintiff's protected information to an unauthorized third party. *Sutter Health v. Superior Court*, 227 Cal. App. 4th 1546, 1556 (2014) (no CMIA claim where there was "no affirmative communicative act" to an undisclosed third party). Here, Plaintiffs' allegations fail to show that any of Plaintiffs' medical information was actually improperly disclosed to a third party, let alone that Grow Care affirmatively intended for the Tools—which Plaintiffs concede may be "customized" and configured to only disclose nonpersonal information (AC ¶¶ 69 n.26, 79, 99)—to improperly disclose protected information. Plaintiffs' amended complaint is replete with descriptions of Grow Care's healthcare business but Plaintiffs fail to address that the Health Insurance Portability and Accountability Act ("HIPAA") governs healthcare companies. That pleading failure is fatal. Plaintiffs cannot seek liability where Grow Care maintains Business Associate Agreements with the vendors that provide the Tools that permit data sharing under HIPAA, and where the purported disclosure was made to a service provider subject to such agreements as necessary to provide the services on the Website, and not to a third-party who intended to use the allegedly disclosed information for its own purposes. Plaintiffs have not alleged otherwise. *See, e.g.*, *Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *6 (S.D. Cal. July 13, 2023) (allegations that "Defendant employs a third-party software service as a tool to record its own data" are insufficient to show an improper third-party disclosure). Accordingly, Plaintiffs' CMIA claim fails.

Fourth, Plaintiffs do not sufficiently allege a lack of consent for the alleged disclosures. Plaintiffs' conclusory allegations that they did not consent are implausible given that the Amended Complaint conspicuously fails to mention Grow Care's Privacy Notices and allege whether Plaintiffs read it. *See generally* Compl. Indeed, *every* page of the website includes a link to Grow Care's Privacy Notices which fully discloses the Website's use of Tools and provides instructions for limiting the collection and disclosure of certain data. *See supra* at pp. 2–3.

**3. Plaintiffs' Invasion of Privacy Claims (Counts IV & V) Should Be Dismissed.**

The "California Constitution and the common law both set a high bar for an invasion of privacy claim." *Belluomini v. Citigroup, Inc.*, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013). "Given the similarity of the two tests, courts consider them together." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022). Specifically, courts consider "(1) the nature of any intrusion upon

reasonable expectations of privacy, and (2) the offensiveness or seriousness of the intrusion, including any justification and other relevant interests." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1193 (N.D. Cal. 2020) (cleaned up). Notably, mere browsing data on a website with health information often fails to meet the "high bar for an invasion of privacy claim" for either the California Constitution or common law because, among other things, such data contains only "general health information" unrelated to a specific individual. *See Smith,* 262 F. Supp. 3d at 954 (rejecting argument that "protected health information" was allegedly collected).

Here, Plaintiffs' allegations are faulty in several respects. As an initial matter, none of Plaintiffs' allegations show that any of the purported disclosures from the Website would be understood or linked to *Plaintiffs'* specific health or condition. To the contrary, Plaintiffs' only allegations show that appointments can be booked on behalf of other individuals (*see* "Relationship to Client" dropdown, AC ¶ 113), which could be someone other than the individual browsing, or could even be to review the providers available without an intent to book an appointment—in each instance, the information relating to the device or computer using the Website may have nothing to do with the information of the client submitted on the Website. *See Smith*, 262 F. Supp. 3d at 955 ("Nothing about the URLs, or the content of the pages located at those URLs, relates 'to the past, present, or future physical or mental health or condition *of an individual*.") (emphasis in original); *Low v. Linkedin Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (dismissing privacy claims).

Moreover, to the extent that Plaintiffs allege that their booking of appointments after disclosing a condition was highly-sensitive or private, they fail to allege facts showing that any of that information was improperly disclosed to a third party. Instead, their allegations simply show that Grow Care's Website, like any website, sends and receives information that is submitted by the Website visitor, and has service provider-like technology that aids in that process. There are no factual allegations showing that any of the information is being sent to an *unintended* third party intruding on their privacy for its own purposes. The absence of such allegations forecloses Plaintiffs' claims. *See Doe v. Amgen Inc.*, 2024 WL 575248, at *3 (C.D. Cal. Jan. 29, 2024) (dismissing privacy claims where allegations regarding "the presence of the Meta Pixel on Defendant's website, combined with Amgen's purported configurations of the Meta Pixel" were "generic and devoid of factual support");

*Graham*, 533 F. Supp. 3d at 832-33 (same where the third-party was a "service provider" and thus an "extension of [defendant] Noom," and there were no factual allegations that the third party "intercepted and used the data itself").

In addition, for reasons stated above, Plaintiffs did not adequately allege a lack of consent because the Amended Complaint failed to allege whether Plaintiffs read the Website's Privacy Notices, which includes prominent disclosures of the Website's use of Tools. *See supra* IV.B.2. Without plausibly alleging a lack of consent, Plaintiffs cannot establish that that alleged disclosures were highly offensive. *See Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 3 (1994) (when "voluntary consent is present, a defendant's conduct will rarely be deemed highly offensive to a reasonable person so as to justify tort liability"); *Hammerling v. Google, LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (no reasonable expectation of privacy when privacy policy disclosed the data sharing practice at issue).

Further, to the extent that Plaintiffs seek costs and damages under their constitutional invasion of privacy claim, their claim fails. "California's constitutional provision protecting the right of privacy [only] supports a cause of action for an injunction, but it does not confer on a litigant a private right of action for damages." *Moore v. Rodriguez*, 2021 WL 2222590, at *20 (S.D. Cal. June 2, 2021) (quotation marks and citation omitted).

Lastly, for the same reasons stated above, *supra* IV.B.1, Plaintiffs' claim under the California Constitution must be dismissed with respect to putative class members who did not access the Website while located in California. The Amended Complaint does not allege that any wrongful conduct occurred in California with respect to out-of-state putative class members. *See* AC ¶ 52 (alleging Grow Care is incorporated in Delaware and headquartered in New York); *Norwest Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214, 224–25 (1999) ("[S]tate statutory remedies may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring *in California.*").

## V. CONCLUSION

For the foregoing reasons, and because the Amended Complaint's deficiencies cannot be cured by amendment, Grow Care respectfully requests that the Court dismiss Plaintiffs' claims with prejudice.

Date: April 9, 2025

Respectfully Submitted,

**SIDLEY AUSTIN LLP**

By: */s/ Amy P. Lally*
Amy P. Lally
Ian M. Ross (admitted *pro hac vice*)

*Attorneys for Defendant Grow Care, Inc.*