Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9662

Ian M. Ross (admitted *pro hac vice*)
iross@sidley.com
SIDLEY AUSTIN LLP
1001 Brickell Bay Drive, Suite 900
Miami, FL 33131
Telephone: (305) 391-5218

Sarah E. Gallo (SBN 334455)
sgallo@sidley.com
SIDLEY AUSTIN LLP
101 California Street, Suite 3500
San Francisco, CA 94111
Telephone: (415) 772-1200

*Attorneys for Defendant*
*Grow Care, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JANE DOE 1 and JANE DOE 2, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GROW CARE, INC.,<br><br>Defendant. | Case No. 5:24-cv-09122-NW<br>Assigned to: Hon. Noël Wise<br><br>**DEFENDANT GROW CARE, INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date: March 4, 2026<br>Time: 9:00 a.m.<br>Location: Courtroom 3, 5th Floor<br>Judge: Hon. Noël Wise |

Pursuant to the Court's Orders, ECF Nos. 52, 61, Defendant Grow Care, Inc. ("Grow Care") respectfully submits this Supplemental Brief in Support of its Motion to Dismiss (the "Motion") Plaintiffs' First Amended Complaint (the "FAC"), which responds to Plaintiffs' Supplemental Brief in Opposition to Defendant's Motion to Dismiss the FAC, ECF No. 64 ("Pls. Supp.").

## I. INTRODUCTION

This Court previously held that Plaintiffs failed to meet their burden to establish specific personal jurisdiction over Grow Care as to purposeful availment or direction. *See* ECF No. 52 at 2. The Court granted Plaintiffs limited jurisdictional discovery to try to cure these deficiencies. *Id.* at 3. After jurisdictional discovery, nothing has changed. This is now Plaintiffs' third attempt to establish personal jurisdiction, and each time, on the pleadings, after opposition briefing, and now after jurisdictional discovery, they fall short for the same reasons. Plaintiffs still cannot show that Grow Care purposefully directed its activities at California or that Plaintiffs' claims arise out of or relate to any California-directed conduct. Even if Plaintiffs could meet their burden on both prongs, exercising jurisdiction here would be unreasonable.

Recognizing the FAC does not support specific personal jurisdiction, Plaintiffs' Supplemental Brief pivots to new jurisdictional theories not alleged in the FAC. They attempt to recast ordinary advertising and routine website analytics as forum-directed conduct, hoping to bring these allegations closer to the completely distinguishable facts alleged in *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025). That effort is not only procedurally improper—Plaintiffs cannot advance jurisdictional theories in briefing not pleaded in their FAC[1]—but also substantively flawed. Plaintiffs' new theories fail on the law and the facts developed in jurisdictional discovery. Because Plaintiffs have again failed to meet their burden, the Court should dismiss with prejudice the FAC for lack of personal jurisdiction.

## II. ARGUMENT

Plaintiffs must establish specific personal jurisdiction over Grow Care. To meet their burden, Plaintiffs must show that Grow Care purposefully directed its activities at California and that Plaintiffs' claims arise out of or relate to Grow Care's California activities. *See* Mot. at 5. Even after

[1] *See, e.g.*, *Dang v. Samsung Elecs. Co.*, No. 14-CV-00530, 2018 WL 11348883, at *7 (N.D. Cal. July 2, 2018), *aff'd sub nom. Dang v. Samsung Elecs. Co., Ltd*, 803 F. App'x 137 (9th Cir. 2020) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

jurisdictional discovery, Plaintiffs fail to satisfy both prongs for specific personal jurisdiction.

**A. Grow Care did not purposefully direct its activities at California.**

To establish purposeful direction, Plaintiffs must show that Grow Care "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Mot. at 6 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004)). Plaintiffs still cannot meet their burden.

**1. Grow Care's alleged acts were not expressly aimed at California.**

Plaintiffs try but fail to meet their burden to show that Grow Care purposefully directed its activities at California by advancing two new, faulty theories. First, Plaintiffs argue that Grow Care targeted California residents with advertising, Pls. Supp. at 2–4, but their argument fails because Grow Care's advertising reflects ordinary customer acquisition, rather than California-directed conduct. Second, Plaintiffs argue that Grow Care aimed its Website[2] tracking at California, *id.* at 5–6, but such tracking was user-initiated and uniform. Each is addressed below.

**A. Grow Care's advertising reflects ordinary customer acquisition, not forum-directed conduct.**

While *Briskin* clarified that express aiming does not require a "forum-specific focus," 135 F.4th at 757, express aiming still requires defendant-created, forum-directed conduct. *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State.") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). And although *Briskin* held that differential targeting is not a *requirement* for showing express aiming under Ninth Circuit law, it nonetheless found that such targeting, or the lack thereof, "may serve as evidence" (or the absence thereof) "that a defendant expressly aimed its conduct toward the forum state, as it did in *Mavrix Photo* and *Will Co.*,"[3] 135 F.4th at 758 n.17. Here, Plaintiffs' new, unpleaded allegations fall far short of the types of purposeful activities shown in those two cases.

First, in *Mavrix Photo*, the defendant "operated a very popular website [celebritygossip.net] with a specific focus on the California-centered celebrity and entertainment industries," and the court

[2] Capitalized terms not defined in this brief have the meanings given to them in the Motion.

[3] Plaintiffs tellingly omit the *Briskin* court's explicit reference to *Mavrix Photo* and *Will Co.* in describing when differential targeting may still show express aiming. *See* Pls. Supp. at 2.

explained that when "a website with national viewership and scope appeals to, and profits from, an audience in a particular state, the site's operators can be said to have 'expressly aimed' at that state." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230–31 (9th Cir. 2011).

Second, in *Will Co*., a Hong Kong-based company expressly aimed its website's content at the United States when the company not only appealed to and profited from the U.S. market through a third-party advertising structure but also "made at least two key choices" that showed an "intent to cultivate an audience in the United States": first, "by choosing to host [the website] in Utah and to purchase [content delivery network] services for North America, [d]efendants chose to have the site load faster for viewers in the United States and slower for viewers in other places around the world," such that defendants "were motivated to appeal to viewers in the United States more than any other geographical location"; and, second, "the site specifically states that access is *only* lawful in the United States, and provides compliance procedures *only* for the United States, which means it prepared for U.S. visitors to the exclusion of all others." *Will Co. v. Lee*, 47 F.4th 917, 919, 924–26 (9th Cir. 2022) (emphasis in original), *overruled by Briskin*, 135 F.4th at 757 n.15.

Here, Plaintiffs claim that Grow Care treated California differently by targeting residents with advertising based on California's population and with advertisements that differed from those directed at other states; targeting specific California regions, as opposed to California generally; and deriving a large portion of Grow Care's patient base and Website visits from California. Pls. Supp. at 2–4. But the evidence shows that Grow Care's advertising reflects ordinary customer acquisition, not forum-directed conduct. Grow Care employs a national advertising strategy designed to attract users to its Website generally, not to direct any alleged conduct at California. ECF No. 63-4 ("Dep. Tr.") at 52:16–21. The advertising is templated across states, such that advertisements shown to users in California are not materially different from advertisements shown in other states. *Id.* at 161:3–19, 161:21–162:14. Advertising decisions are driven by ordinary business considerations, such as population size and market demand, rather than by any effort to target California. *Id.* at 132:20–133:4, 142:15–19, 240:9–14. Consistent with that national strategy, Grow Care does not advertise in every state, which reflects routine market allocation. *Id.* at 120:19–23, 140:22–25, 141:5–10.

Plaintiffs' own allegations further undermine their theory. Plaintiffs do not allege that they

visited Grow Care's Website in the first instance because of any Grow Care advertisement. Instead, they allege that targeted advertisements appeared only after their interactions with the Website. *See* FAC ¶¶ 21, 46, 50. Advertising alleged as a downstream effect of *user-initiated* Website activity does not show that Grow Care purposefully directed the challenged conduct at California as a forum. *See Walden*, 571 U.S. at 290 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").

And finally, the volume of California users merely reflects where Grow Care's users are located, not that Grow Care directed the alleged conduct at California as a forum. *See id.* at 284 (explaining defendant *itself* must create contacts with forum State).

Further, a comparison of the allegations in *Mavrix* and *Will Co.* underscores the lack of similar allegations here. Unlike in *Mavrix*, Grow Care's Website is not focused on California-specific industries or content, and California is not the subject matter of the Website. *See, e.g.*, FAC ¶ 1. Nor did Grow Care make the kind of forum-preferential technical or operational choices at issue in *Will Co.*, such as configuring hosting or content delivery to favor California users, or preparing compliance procedures for California users to the exclusion of everywhere else. Grow Care's servers are not in California, Dep. Tr. 91:20–92:11, 92:21-24, 98:6–10, the same Website is accessible nationwide, *id.* at 175:19–176:7, and Grow Care does not provide compliance procedures only for California, *see* FAC ¶ 14. This case lacks the forum-preferential choices present in *Mavrix* and *Will Co.* And under Plaintiffs' theory, any national website that runs targeted advertising would somehow be subject to specific jurisdiction in every state, which clearly is not the result intended in the *Briskin* analysis.

For these reasons, Plaintiffs have not shown express aiming based on Grow Care's advertising.

**B. Grow Care's Website tracking was user-initiated and uniformly operated, not directed at California.**

Plaintiffs likewise have not shown express aiming based on the Website tracking at issue. Express aiming requires that the defendant direct the challenged conduct at the forum itself. *Walden*, 571 U.S. at 284 ("[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State.") (quoting *Burger King*, 471 U.S. at 475)). "An interactive platform expressly aims its wrongful conduct toward a forum state when its contacts are *its own choice* and not random,

isolated, or fortuitous, even if that platform cultivates a nationwide audience for commercial gain." *Briskin*, 135 F.4th at 758 (cleaned up and emphasis added). The question is whether the defendant directed the challenged conduct at the forum itself, not simply whether the defendant chose to operate a nationwide platform that interacts with users wherever they happen to be.

Plaintiffs argue that Grow Care "expressly aimed its activities at California in the same way the defendant in *Briskin* did." Pls. Supp. at 5. The facts in *Briskin* tell a different story. In *Briskin*, a plaintiff challenged Shopify's tracking activities in connection with the plaintiff's online purchase from a different retailer's website. 135 F.4th at 746. Shopify is "an e-commerce platform that facilitates online sales for merchants with whom it contracts." *Id.* at 747. When the plaintiff purchased his athletic wear, the retailer's checkout and payment form never mentioned Shopify: "the merchant whose product or service the consumer is purchasing appears to generate the payment form itself on the consumer's computer screen, and the screen does not identify Shopify's role in the transaction." *Id.* The plaintiff alleged that "Shopify knew that the consumer is in California before it actually transacts the payment process because its software secures geolocation information when the consumer clicks on an item to simply view it on [the retailer's] website." *Id.* at 756 n.13 The plaintiff alleged that "in the process of facilitating [the plaintiff's] credit card transaction for the merchant, Shopify took the opportunity to install 'cookies' on the device he used to buy the athletic wear and that Shopify did so without his knowledge or consent." *Id.* at 746. The cookies "permanently remained on [the plaintiff's] device, tracked its physical location, and collected data regarding [his] online shopping activity." *Id.* Shopify then "used the resulting data to compile a consumer profile that Shopify marketed widely, including to many California merchants." *Id.* On these facts, the court concluded that "Shopify deliberately reached out beyond its home state by knowingly installing tracking software onto unsuspecting Californians' phones so that it could later sell the data it obtained, in a manner that was neither random, isolated, nor fortuitous." *Id.* at 759 (cleaned up).

Plaintiffs would have this Court believe that Grow Care is Shopify. To that end, Plaintiffs argue that Grow Care "was aware of Plaintiffs' and class members' locations at the time (or shortly thereafter) it collected and shared their PII and PHI," "places 'tracking cookies' on Website visitors' browsers," and "uses Website usage data for its marketing." Pls. Supp. at 5–6.

By contrast, the FAC and jurisdictional discovery show that Grow Care's Website tracking operates in a materially different manner. Unlike Shopify's alleged practices, the record here does not show that Grow Care initiated the installation of tracking software on devices it knew were located in California, or that it collected data as part of a forum-directed data-extraction operation. The tracking at issue occurs only *after* a user voluntarily visits Grow Care's Website and interacts with the Website. Dep. Tr. 43:17–44:25, 209:10–210:14, 210:16–211:4, 211:13–212:7. Plaintiffs do not allege that Grow Care installs any software or code on users' devices independent of such a visit. Plaintiffs identify no evidence that Grow Care knew Plaintiffs were located in California when the cookies or tracking technologies ran. Any association of location information occurred later, such as through user input, *id.* at 43:17–44:25, 209:10–210:14, 210:16–211:4, 211:13–212:7, or routine security functionality, *id.* at 45:12–15, 45:17–46:7. Even then, the placement of cookies is dependent on a variety of factors, and they may not be placed depending on security settings. *Id.* at 31:12–32:15, 33:9–18, 175:19–176:7, 217:8–218:2, 268:11–24, 274:10–18, 363:7–23, 364:3–24. Moreover, even after jurisdictional discovery, Plaintiffs have not alleged that there was ever a cookie placed on *their* browsers. They cannot support personal jurisdiction based on a hypothetical that has nothing to do with them or their devices. *See generally Rounds v. Case-Mate Inc.*, No. 2:24-CV-08531, 2025 WL 1873999, at *7 (C.D. Cal. July 2, 2025) (rejecting hypothetical as basis for personal jurisdiction).

The record also shows that the Website tracking at issue operated uniformly nationwide. The same cookies and tracking technologies ran when users visited Grow Care's Website, regardless of where the user was located, Dep. Tr. 175:19–176:7, and Plaintiffs do not identify any California-specific configuration that altered how the tracking functioned for California users. *See* Pls. Supp. at 5–6. The tracking was triggered by *a user's* voluntary interaction with the Website, not by the user's location, and it did not operate differently based on whether a user was in California or elsewhere.

Another court similarly found that *Briskin* was factually distinguishable. In *Rounds*, the court rejected an express-aiming theory based on website tracking where the defendant operated a website and used third-party analytics tools, but did not direct its tracking conduct at California as a forum. 2025 WL 1873999, at *6–7. The court explained that *Briskin* involved allegations of forum-directed installation of software and data collection with contemporaneous knowledge of a user's location,

whereas routine website analytics triggered by user visits did not amount to express aiming at California. *Id.* at *7. In *Rounds*, the defendant's contacts with California "merely [arose] from California *consumers'* choice to purchase goods from [d]efendant." *Id.* The same reasoning applies here: Grow Care's contacts with California merely arose from California *consumers'* choice to engage with Grow Care's Website.

For these reasons, Plaintiffs have not shown express aiming based on Grow Care's Website tracking, which was user-initiated and uniformly operated, not directed at California.

**2. Grow Care's alleged acts did not cause harm that Grow Care knew was likely to be suffered in California.**

Plaintiffs also fail to satisfy the requirement that Grow Care knew the alleged harm was likely to be suffered in California. *See* Mot. at 12; ECF No. 37 ("Reply") at 6; *cf.* Pls. Supp. at 6–7. This is a separate reason why Plaintiffs have failed to show that Grow Care purposefully directed its activities at California. Here, Plaintiffs argue that Grow Care "deliberately reached out beyond its home state" by "choosing to advertise [in] California," "knowing Website users were located in California, through their IP address," and "placing cookies on California visitors' browsers." Pls. Supp. at 6. But Plaintiffs identify no evidence that Grow Care knew Plaintiffs were in California at the time of the alleged cookie installation. Nor could they. *See* Dep. Tr. 43:17–44:14. Nor do Plaintiffs point to any evidence that Grow Care configured or designed its conduct with California in mind. It did not. *See id.* at 175:19–176:7. Plaintiffs' argument is foreclosed by Supreme Court precedent. The law is clear that "the plaintiff cannot be the only link between the defendant and the forum," and that "mere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 571 U.S. at 285, 289–90. Nothing in *Briskin* alters that requirement; there, the defendant conceded that any alleged harm would be suffered in California, so the court did not analyze this prong of the test. *See* 135 F.4th at 756. Plaintiffs here bear the burden to establish Grow Care's knowledge of forum-specific harm, and they have not done so.[4]

---

[4] Plaintiffs' citation to *Lewis* does not change this. *See* Opp. at 7 (citing *Lewis v. Magnite, Inc.*, No. 2:25-CV-03448, 2025 WL 3687546, at *7 (C.D. Cal. Dec. 4, 2025)). The defendant there was a "registered data broker in California" that had "developed a proprietary online tracker known as the 'Rubicon Tracker,'" which "collect[ed] information about consumers and their mobile devices by intercepting, *inter alia*, location data," and the plaintiffs "plausibly allege[d] that [the] [d]efendant

**B. Plaintiffs' claims do not arise out of or relate to Grow Care's California activities.**

Even if Plaintiffs could meet their burden to show that Grow Care purposefully directed its activities at California, Plaintiffs cannot meet their separate burden to show that their claims "arise out of relate to" Grow Care's California activities.

First, Plaintiffs' alleged injuries do not "arise out of" Grow Care's contacts with California. There must be "a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 265 (2017). Plaintiffs argue that their "alleged harm . . . arises out of Defendant's contacts *with Plaintiffs' devices*[.]" Pls. Supp. at 7 (emphasis added). Plaintiffs' argument fails because they are trying to redefine the relevant forum contact as "contact with Plaintiffs' devices," *id.*, rather than contact *with California as a forum*. This fails as a matter of law because "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. Instead, "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.*; *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 417 (1984) (The "unilateral activity of another party . . . is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State[.]"). The alleged tracking occurs only upon a user's voluntary Website visit, Dep. Tr. 43:17–44:25, 209:10–210:14, 210:16–211:4, 211:13–212:7, and operates uniformly nationwide, *id.* at 175:19–176:7, so Plaintiffs' alleged injuries do not "arise out of" Grow Care's contacts with California.[5]

Second, Plaintiffs also cannot satisfy the "relates to" prong because their arguments are far too reductive. Here, Plaintiffs argue that Grow Care "made it more likely that Californians would suffer harm by visiting the Website to book appointments and thus have their PII and PHI disclosed and/or intercepted" because Grow Care "specifically target[ed] California residents with advertisements to

---

could track [p]laintiffs' precise geolocation data." *Lewis*, 2025 WL 3687546, at *1, *7. By contrast, Plaintiffs here do not point to evidence that Grow Care could track "precise geolocation data." *Cf.* Dep. Tr. 44:21–25, 45:12–15, 45:17–46:7, 46:10–20, 229:13–19.

[5] *Briskin* does not change this result. That court only briefly addressed this prong of the personal jurisdiction analysis, but in finding the claims arose from Shopify's California conduct, the court emphasized that Shopify allegedly initiated contact with the plaintiff's device while knowing the device was located in California. 135 F.4th at 760. But here, any interaction with Plaintiffs' devices occurred only after Plaintiffs voluntarily visited the Website, Dep. Tr. 43:17–44:25, 209:10–210:14, 210:16–211:4, 211:13–212:7, and without Grow Care's contemporaneous knowledge that the devices were in California, *id.* at 43:17–44:14. Absent that forum-directed conduct, Plaintiffs cannot rely on *Briskin* to satisfy the "arises out of" requirement.

increase the number of California patients." Pls. Supp. at 7. Plaintiffs similarly argue that their "data privacy injuries are those that would tend to be caused by Defendant's contacts." *Id.* Plaintiffs misread *Ford* as allowing jurisdiction wherever a defendant advertises and has users. While the Supreme Court in *Ford* relaxed strict but-for causation, the Court did not eliminate the need for a close connection between the forum contacts and the type of injury alleged. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021) (explaining the relatedness inquiry "does not mean anything goes" and "incorporates real limits, as it must to adequately protect defendants foreign to a forum"); *Rounds*, 2025 WL 1873999, at *7 ("Such 'relatedness requires a close connection between contacts and injury.'" (quoting *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 506 (9th Cir. 2023))). Thus, the relatedness inquiry focuses on the defendant's forum conduct, not a plaintiff's path to injury.

The court's reasoning in *Rounds* is instructive. There, a plaintiff's arguments that his "privacy injury would never have occurred had [a] [w]ebsite not been available to him in California" were "far too reductive" and failed to satisfy specific personal jurisdiction. *Rounds*, 2025 WL 1873999, at *7. The court reasoned that the plaintiff did not allege that *his* injury had a connection to or was caused by the company's alleged contacts with California—for example, he did not allege that "his visit to the [w]ebsite only arose due to [d]efendant's efforts to market and sell products to Californians." *Id.* at *7 & n.4. Because the plaintiff did "not allege that any products were sold or shipped to *him*," it was "particularly challenging to conclude that [p]laintiff's harm arose out of [d]efendant's selling goods to Californians." *Id.* at *7. The company's "broader business contacts with California [we]re unrelated to [plaintiff's] alleged privacy-related harm." *Id.*

The same deficiencies in *Rounds* are present here. Plaintiffs do not identify any forum-specific conduct that would bear a "close connection" to the alleged interception or disclosure of data. *Id.* at *7 (quoting *Yamashita*, 62 F.4th at 506). They point to California advertising, which has nothing to do with their claim (they have not brought a false advertising case), and which is nothing more than "broader business contacts" that are not related to their alleged harm. *Id.* at *7. Plaintiffs also do not allege that *they* visited the Website only because of Grow Care's California advertising. *See id.* at *7 & n.4. Because Plaintiffs have not shown that their alleged injuries relate in any meaningful way to Grow Care's contacts with California, as opposed to general marketing and operation of the Website

accessible nationwide, they cannot satisfy the "relates to" prong of the specific jurisdiction analysis.[6]

Third, as a matter of policy, accepting Plaintiffs' jurisdictional theory would improperly subject Grow Care to jurisdiction wherever it has users. Plaintiffs' argument reduces the "arises out of or relates to" requirement to the mere fact that Grow Care has a national advertising strategy that includes advertising in California, and that users in California experienced the alleged injury. If that were sufficient, any company operating a nationwide website would be subject to personal jurisdiction in every state where its website is accessible, regardless of whether the defendant's forum contacts had any meaningful connection to the alleged injury. Plaintiffs' theory would collapse the distinction between specific and general jurisdiction and is inconsistent with controlling precedent.[7]

### C. Subjecting Grow Care to jurisdiction in California would be unreasonable.

Finally, even if Plaintiffs could satisfy the first two prongs of the specific jurisdiction analysis (and they cannot), exercising jurisdiction over Grow Care in California would be unreasonable. Grow Care has already made a detailed, fact-based showing that California jurisdiction would be inconsistent with traditional notions of fair play and substantial justice. Mot. at 15–16. Grow Care also explained why Plaintiffs' opposition arguments lack merit. Reply at 8–10. Plaintiffs did not address reasonableness again, *see* Pls. Supp. at 8, and nothing developed in jurisdictional discovery alters the analysis. Exercising personal jurisdiction over Grow Care in California still would be unreasonable.

## III. CONCLUSION

For these reasons, Grow Care respectfully requests that the Court dismiss the FAC for lack of personal jurisdiction. Because the FAC's deficiencies cannot be cured by amendment, Grow Care respectfully requests that the Court dismiss Plaintiffs' claims with prejudice.

---

[6] Plaintiffs' reliance on *Briskin* is again misplaced. That plaintiff's privacy injury "related to" Shopify's California contacts because Shopify allegedly installed its software onto Californians' devices it knew were located in California and extracted personal data from those devices. 135 F.4th at 760. But here, the asserted cookie installation and tracking occurred only after Plaintiffs voluntarily visited the Website, Dep. Tr. 43:17–44:25, 209:10–210:14, 210:16–211:4, 211:13–212:7, and the Website operated in the same manner regardless of location, *id.* at 175:19–176:7.

[7] The decision in Martinez is based on facts unlike those here. *See* Pls. Supp. at 7 (citing *Martinez v. Choose Your Horizon, Inc.*, No. 24-CV-02798, 2025 WL 2498138, at *6 (N.D. Cal. Sept. 1, 2025)). There, the court emphasized that the company "*requir[ed]* the customers' communications with California medical clinicians" and intercepted PII in the course of those California-based communications. *Martinez*, 2025 WL 2498138, at *6 (emphasis added). There are no such allegations of *required* communications here.

Date: February 13, 2026

Respectfully Submitted,

**SIDLEY AUSTIN LLP**

By: */s/ Amy P. Lally*
Amy P. Lally
Ian M. Ross (admitted *pro hac vice*)
Sarah E. Gallo

*Attorneys for Defendant Grow Care, Inc.*