USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______________
DATE FILED: 10/22/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE 1 and JANE DOE 2, *individually and on behalf of all other persons similarly situated*,

Plaintiffs,

-v-

GROW CARE, INC.,

Defendant.

**COMBINED ORDER AND REPORT & RECOMMENDATION**

26-CV-1929 (VSB) (HJR)

**HENRY J. RICARDO, United States Magistrate Judge.**

**To the Honorable Vernon S. Broderick, United States District Judge:**

Plaintiffs Jane Doe 1 and Jane Doe 2 ("Plaintiffs") filed this putative class action against Defendant Grow Care, Inc. ("Defendant" or "Grow Care"), which operates a website for finding and making appointments with mental healthcare professionals. Plaintiffs allege that Grow Care installed tracking software on its website that surreptitiously intercepted their confidential communications and disclosed their private medical information to certain third parties without consent. Accordingly, Plaintiffs assert claims under the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*; the California Invasion of Privacy Act, Cal. Pen. Code § 631; the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56.10; the California Constitution; and for the common law claim of intrusion upon seclusion.

Defendant moves to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant also seeks a determination that certain documents are incorporated by reference into the complaint or, in the alternative, qualify for

judicial notice. For the reasons described below, Defendant's motion for judicial notice is **GRANTED IN PART and DENIED IN PART**. Additionally, the undersigned respectfully **RECOMMENDS** that Defendant's motion to dismiss be **DENIED**.

## I. BACKGROUND

### A. Factual Background

Defendant Grow Care provides an online mental healthcare platform, Grow Therapy, through its website, growtherapy.com (the "Website"). First Amended Complaint, ECF No. 29 ("First Amended Complaint" or "FAC") ¶ 60. The Website provides listings of therapists and allows users to make appointments with them. *Id.* Plaintiff Jane Doe 1 has used the Website since approximately January 2024 to book appointments with a therapist for her anxiety and depression. *Id.* ¶ 45. Plaintiff Jane Doe 2 has used the Website since approximately April 2024 to make appointments for her anxiety and depression. *Id.* ¶ 49. While using the Website, Plaintiffs provided Grow Care with, *inter alia*, their full names, email addresses, phone numbers, medical insurance carriers, and their specific mental health concerns. *Id.* ¶ 119. Both Plaintiffs allege that, after providing this personal information, they received targeted advertisements on social media platforms. *Id.* ¶ 21.

Plaintiffs allege that Grow Care installed tracking software on its Website (the "Trackers") to monitor and record their actions on the site. *Id.* ¶ 61. Grow Care obtained these Trackers from certain third parties, Datadog, Twilio, and

Wingify (the "Third Parties"). *Id.* ¶ 61. Plaintiffs' claims of wiretapping, invasion of privacy, and unauthorized disclosure of medical information are grounded in the allegation that these Trackers intercept and transmit Plaintiffs' confidential healthcare information to the Third Parties without consent.

Datadog, one of the Third Parties, operates a program named Real User Monitoring ("RUM"). *Id.* ¶ 62. When installed on a website, RUM collects user attributes such as user ID, email, and name. *Id.* ¶ 63. Further, RUM collects user actions while interacting with a website, such as checkout button clicks. *Id.* ¶ 63. RUM also allows for "Session Replay," which creates a video-like reproduction of a user's webpage interactions. *Id.* ¶¶ 65–66. Because Grow Care uses Datadog's Session Replay feature, Datadog's embedded code tracks user interactions on the Website, including clicks, scrolls, typing, and other input data. *Id.* ¶ 72. Datadog can then use this customer data to develop and improve its own products. *Id.* ¶ 74.

Twilio employs a program named Segment API that collects user data by tracking their online interactions. *Id.* ¶¶ 79–80, 89. Segment API includes a feature called "Engage," which aggregates a user's data across devices to create a single customer profile. *Id.* ¶¶ 81–82. Twilio then transmits the information it collects to third parties that Defendant uses for targeted advertising. *Id.* ¶ 85.

Wingify provides a code snippet allowing it to compile behavioral data from website visitors. *Id.* ¶¶ 92–94. Wingify offers numerous features, including session replay software, which allows recording of visitor interactions with a website. *Id.*

¶¶ 96–97. Website owners can then analyze session recordings to understand user engagement patterns. *Id.* ¶ 98.

### B. Procedural Background

Plaintiffs commenced this action in the Northern District of California and filed a First Amended Complaint on March 5, 2025. ECF Nos. 1, 29. On April 9, 2025, Defendant filed its motion to dismiss, ECF No. 37 (the "Motion to Dismiss" or "MTD"), as well as a request to treat certain documents as incorporated by reference into the complaint or, in the alternative, to take judicial notice of them, ECF No. 38 (the "Judicial Notice Motion"). On May 14, 2025, Plaintiffs filed their opposition to the Motion to Dismiss, ECF No. 41 ("MTD Opp."), and an opposition to the Judicial Notice Motion, ECF No. 42 ("Judicial Notice Opp."). On June 11, 2025, Defendant filed its reply in further support of the Motion to Dismiss, ECF No. 45 ("MTD Reply"), and reply in further support of the Judicial Notice Motion, ECF No. 46.[1]

After a period of jurisdictional discovery and further briefing on whether Defendant was subject to personal jurisdiction in California, the parties filed a stipulation to transfer this action to the Southern District of New York. ECF No. 69. This case was transferred here on March 9, 2026. ECF No. 71.

---

[1] The briefing of the Motion to Dismiss focused largely on whether Grow Care was subject to personal jurisdiction in California. Defendant does not dispute that it is subject to personal jurisdiction in New York, *see* ECF No. 70 at 2, and these jurisdictional arguments are not addressed.

On March 26, 2026, the parties submitted a joint letter informing the Court of the fully-briefed motions. ECF No. 78 at 1–2.[2] The parties stated that they were "unaware of any additional information to bring to the Court's attention at this time." *Id.* at 2. On March 27, 2026, the District Judge entered an order referring these motions to the undersigned. ECF No. 79.

## II. LEGAL STANDARDS

In deciding a motion to dismiss under Rule 12(b)(6), a court accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. *Hacopian v. BlackRock, Inc.*, 788 F. Supp. 3d 552, 558–59 (S.D.N.Y. 2025). To survive dismissal, a plaintiff must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

### A. The Court Takes Judicial Notice of the Privacy Notice and Notice of Privacy Practices

When considering a Rule 12(b)(6) motion, a court is typically confined to the facts alleged in the complaint. *Lowell v. Lyft, Inc.*, 352 F. Supp. 3d 248, 254 (S.D.N.Y. 2018). However, a court may "consider documents attached to the

[2] Pages cited in court filings refer to the ECF-generated pagination.

complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit." *Id.* (citing *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013)). Additionally, a complaint is considered to "include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc*, 282 F.3d 147, 152 (2d Cir. 2002)). Even if a document is not incorporated by reference, a court may still consider it if a pleading "relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Nicosia*, 834 F.3d at 230 (cleaned up).

"[A] court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination." *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) (cleaned up). "If the court takes judicial notice, it does so in order to determine what statements the documents contained—but not for the truth of the matters asserted." *Lee v. Springer Nature Am., Inc.*, 769 F. Supp. 3d 234, 247 (S.D.N.Y. 2025) (cleaned up).

Defendant asks the Court to consider two documents in connection with its motion to dismiss: (1) a copy of Grow Therapy's Privacy Notice, ECF No. 38-1, and (2) a copy of Grow Therapy's Notice of Privacy Practices, ECF No. 38-2. Judicial Notice Motion at 2. Plaintiffs oppose this request, arguing that the First Amended

Complaint does not contain extensive references to the Privacy Notice and does not mention the Notice of Privacy Practices at all. Judicial Notice Opp. at 3–4. Plaintiffs also point out that the Privacy Notice that Defendant attaches as Exhibit A is not the same version of the Privacy Policy that was cited in the First Amended Complaint. *Id.* at 4.

The Court does not find the Privacy Notice and Notice of Privacy Practices to be incorporated by reference or integral to the First Amended Complaint. Although Plaintiffs do refer to a version of the Privacy Notice in the First Amended Complaint, *see* FAC ¶¶ 14–16, 18, 41, they do "not link to, nor quote from" the version of the Privacy Notice proffered by Defendant, and they do not mention the Notice of Privacy Practices at all. *Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 43 (S.D.N.Y. 2025). Thus, it cannot be said that Plaintiffs relied on the Privacy Notice or Notice of Privacy Practices submitted by Defendant in drafting the complaint. *See Nicosia*, 834 F.3d at 231 ("A necessary prerequisite for taking into account materials extraneous to the complaint is that the plaintiff rely on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough." (internal quotations and citations omitted)).

On the other hand, the Court does take judicial notice of the Privacy Notice and Notice of Privacy Practices. Plaintiffs do not dispute that the Privacy Notice and Notice of Privacy Practices are authentic and accurate. Instead, Plaintiffs object that Defendant seeks judicial notice of a different version of its Privacy Notice than what is referenced in the First Amended Complaint. Judicial Notice

Opp. at 4. But this does not mean that these exhibits are inaccurate representations of the Website. Further, there is authority for taking judicial notice of a particular version of a website. *See Lee*, 769 F. Supp. 3d at 250 (taking judicial notice of exhibits showing website on a certain date and the current version of the website). Therefore, the Court finds that it is proper to take judicial notice of the documents proffered by Defendant as versions of Defendant's Privacy Notice and Notice of Privacy Practices.

### B. The Motion to Dismiss Should be Denied

The First Amended Complaint asserts five causes of action based on allegations that Defendant disclosed Plaintiffs' medical information to third parties by embedding the Trackers on its website. FAC ¶¶ 7, 46. Defendant argues that these claims should be dismissed because Plaintiffs fail to plead the elements of their claims or because the statues that Plaintiffs invoke do not apply to the conduct alleged. MTD at 24. Because the undersigned concludes that Plaintiffs have adequately pleaded each cause of action, the Motion to Dismiss should be denied.

#### 1. Plaintiffs State a Claim Under the ECPA and CIPA

The elements of a claim under the Federal Wiretap Act, as amended by the Electronic Communications Privacy Act of 1986 ("ECPA"), are that a defendant: (1) intentionally (2) intercepts, endeavors to intercept, or procures another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device. 18 U.S.C. § 2511; *see also Diaz v. Paramount Skydance Corp.*, No. 25-CV-2945, 2026 WL 2930820, at *8 (C.D. Cal. Sept. 29, 2026) (stating elements for ECPA claim). Similarly, the California Invasion of Privacy Act

("CIPA") makes it unlawful for "[a]ny person . . . [to] intentionally tap[], or make[] any unauthorized connection . . . or . . . willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[], or attempt[] to read, or to learn the contents or meaning of any message[.]" Cal. Pen. Code § 631(a).

Defendant argues that Plaintiffs' ECPA and CIPA claims should be dismissed because: (1) ECPA is a one-party consent statute and Grow Care consented to the alleged interception by the Third Parties, and (2) Plaintiffs fail to plead that there was an intentional interception of communications by third parties. MTD at 25–28. These arguments both fail.

**a. The Crime-Tort Exception Applies to Plaintiffs' ECPA Claim**

The ECPA provides an exemption "where one of the parties to the communication has given prior consent to such interception[.]" 18 U.S.C. § 2511(2)(d). However, this exemption does not apply if a "communication is intercepted for the purpose of committing any criminal or tortious act[.]" *Id.* "This crime-tort exception is construed narrowly" and applies only when the crime or tort is a "primary motivation or a determinative factor for the defendant's conduct." *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 378 (S.D.N.Y. 2024) (cleaned up).

Grow Care argues that the crime-tort exception does not apply here because its motive in using the Trackers was to aid its marketing, advertising, and analytics, not to commit a crime or tort. MTD at 25–26 (citing FAC ¶¶ 62, 80, 83–

85, 88, 92, 147). This argument fails because "[a] defendant's criminal or tortious purpose of knowingly . . . disclos[ing] individually identifiable health information to another person . . . in violation of HIPAA, may satisfy the crime-tort exception." *Cooper*, 742 F. Supp. 3d at 380 (cleaned up) (collecting cases); *see also Gay v. Garnet Health*, No. 23-CV-6950, 2024 WL 4203263, at *4 (S.D.N.Y. Sept. 16, 2024) (holding that crime-tort exception applied where plaintiffs alleged that information such as appointments, communications with doctors, and medical records were transmitted from defendant's website to third parties); *Pattison v. Teladoc Health, Inc.*, No. 23-CV-11305, 2025 WL 1756364, at *3 (S.D.N.Y. June 25, 2025) (declining to dismiss ECPA claim where plaintiffs alleged that defendant knowingly disclosed their personally identifiable information ("PII") and protected health information ("PHI") without authorization for marketing purposes).

*Cooper* is instructive. That decision addressed claims that defendant Mount Sinai used tracking technologies on its website to transmit personal information to a third party, Facebook, without authorization. *Cooper*, 742 F. Supp. 3d at 372–73. The court concluded that plaintiffs plausibly pleaded application of the crime-tort exception because the complaint supported "the inference that Mount Sinai, for commercial ends, intentionally disclosed individually identifiable patient health information, and thus violated HIPAA, which makes it a crime for a health care provider to disclose individually identifiable health information for commercial gain." *Id.* at 382 (citing 42 U.S.C. § 1320d-6).

Here, Plaintiffs allege that Grow Care disclosed their PHI and PII without authorization. FAC ¶ 47. More specifically, when Plaintiffs booked therapy appointments through the Website they communicated their individual mental health concerns. *Id.* ¶ 119. Plaintiffs allege that, by embedding the Trackers into the Website, Grow Care enabled the Third Parties to intercept Plaintiffs' communication of their medical information, which resulted in Plaintiffs receiving digital advertisements related to Grow Therapy. *Id.* ¶ 46. Further, as discussed in Section III(B)(3) below, Plaintiffs state actionable claims for invasion of privacy and intrusion upon seclusion. Drawing reasonable inferences in Plaintiffs' favor, Plaintiffs sufficiently allege that Grow Care acted with a tortious or criminal intent.

Grow Care's argument to the contrary relies on decisions by some California District Courts finding that "the crime-tort exception is inapplicable where a defendant's primary motivation is to make money rather than to injure plaintiffs tortiously or criminally." *Roe v. Amgen Inc.*, No. 23-CV-7448, 2024 WL 2873482, at *1, *6 (C.D. Cal. June 5, 2024) (dismissing ECPA claim and holding that the crime-tort exception did not apply where defendant allegedly embedded tracking pixels that sent confidential medical information to third parties). Grow Care, however, acknowledges that "courts in [the 9th Circuit] disagree" on application of the crime-tort exception. MTD Reply at 15. Indeed, other California District Courts have applied the crime-tort exception where plaintiffs stated a claim for invasion of privacy. *See R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901–02 (C.D. Cal. 2024) ("the Court concludes that Plaintiffs have stated a claim for invasion of privacy.

Accordingly, viewing the allegations in the light most favorable to Plaintiffs, the Court concludes that the SAC pleads Defendant's tortious intent." (citations omitted)); *see also In re BetterHelp, Inc. Data Disclosure Cases*, No. 23-CV-1033, 2024 WL 3416511, at *4 (N.D. Cal. July 15, 2024) (holding that the crime-tort exception applied to an ECPA claim where defendant "arguably was committing the tort/crime of disclosing its customer's sensitive mental health-related information in violation of HIPAA").

Faced with this split of authority in California, Grow Care claims, "the more persuasive view is that financial motivation alone does not trigger the crime-tort exception," but fails to explain why this is so. MTD Reply at 15. Weighing against Grow Care is an instructive decision finding that the crime-tort exception applied where plaintiffs stated a claim for invasion of privacy. *R.C.*, 733 F. Supp. 3d at 901–02. There, plaintiffs alleged that Walgreens employed website tracking tools that "intercept[ed], duplicate[d], and re-direct[ed] Plaintiffs' and class members' [PII and PHI] to third parties like Facebook, Google, Bing, and Pinterest." *Id.* at 886. Thus, the court concluded that plaintiffs adequately alleged a violation of state privacy law such that the court could infer that defendant acted with tortious intent. *Id.* at 901–02; *see also Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (holding that the crime-tort exception applied where plaintiffs adequately alleged that defendant violated state privacy laws).

Based on precedent in this District and the approach taken by numerous California District Courts, the unauthorized disclosure of medical information that

Plaintiffs allege here is sufficient to invoke the crime-tort exception under the ECPA and CIPA.

**b. Plaintiffs Plausibly Plead Intentional Interception of the Contents of a Communication**

Next, Grow Care argues that Plaintiffs' ECPA and CIPA claims should be dismissed because they fail to allege an intentional interception of the contents of a communication. MTD at 26. "The analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (citation omitted). Under these statutes, Plaintiffs must allege that "the defendant acted consciously and deliberately with the goal of intercepting wire communications." *United States v. Christensen*, 828 F.3d 763, 775 (9th Cir. 2015); *see also Diaz*, 2026 WL 2930820, at *9 (applying standard to ECPA and CIPA claims).[3]

Grow Care claims that Plaintiffs fail to allege an intent to intercept "communications" because "Plaintiffs have alleged only an intent to record *browsing activity*, which is non-actionable and separate from '*communications*.'" MTD at 26–27 (emphasis added) (citing *Mikulsky v. Bloomingdale's LLC*, No. 23-CV-425, 2024 WL 3091395, at *3 (S.D. Cal. May 14, 2024)). This argument is unpersuasive. Contrary to Defendant's assertion, the First Amended Complaint alleges that Grow Care employs the Trackers to allow the Third Parties to receive recordings of

[3] The ECPA defines intercept as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. §2510(4); *see also* Cal. Penal Code § 631(a) (prohibiting using electronic means to "learn the contents or meaning" of any "communication" "without . . . consent" or in an "unauthorized manner.").

"electronic communications" that users "entered into search bars, chat boxes, and online quizzes[.]" FAC ¶¶ 71, 101. This sufficiently pleads interception of the "contents" of communications, which the ECPA defines to include "information concerning the substance, purport, or meaning of [Plaintiffs'] communication." 18 U.S.C. § 2510(8); *see also Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) ("The 'contents' of a communication under CIPA and the federal Wiretap Act are the same." (citation omitted)).

Further, the decision Grow Care cites in support of this argument, *Mikulsky*, was reversed in part by the Ninth Circuit, which held that the District Court erred in dismissing plaintiff's CIPA claim because the complaint "alleged real-time capture of the contents of [plaintiff's] communications on Defendants' website without her consent, not merely the real-time capture of information regarding the characteristics of the communications." 2025 WL 1718225, at *1. The same is true here, where Plaintiffs allege that Grow Care "[t]hrough the [Trackers] aided [the Third Parties] with intercepting Plaintiffs' and Class Members' identities and medical information, including information related to the type of medical treatment they were seeking and for which they booked therapist appointments." FAC ¶ 106. The conditions for which Plaintiffs sought treatment qualify as the content of Plaintiffs' communications with the Website.

Grow Care also argues that Plaintiffs fail to allege eavesdropping or interception of communications because Plaintiffs' browsers communicated directly with the Third Parties. MTD at 27. This argument is based on *Cole v. Quest*

*Diagnostics, Inc.*, No. 23-CV-20647, 2025 WL 88703 (D.N.J. Jan. 14, 2025), which concluded that there was no eavesdropping in violation of the ECPA where plaintiffs' "browsers were instructed to send a second, separate GET request to a third-party website[.]" *Id.* at *3. *Cole* relied on a Third Circuit decision, *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125 (3d Cir. 2015), which appears to be an outlier on this issue. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607–08 (9th Cir. 2020) (rejecting *In re Google* in favor of the approach taken by the First and Seventh Circuits, holding that "unknown duplication and communication of GET requests do not exempt a defendant from liability under the party exception.").[4]

Further, *Cole* and *In re Google* addressed facts different from those alleged here. In those cases, plaintiffs alleged that their information was acquired through "GET requests," such that the alleged eavesdroppers in those cases were found to directly communicate with the plaintiffs. *See In re Google*, 956 F.3d at 142 ("the operative allegations of the complaint support only the conclusion that the defendants acquired the plaintiffs' internet history information by way of GET requests that the plaintiffs sent directly to the defendants"); *Cole*, 2025 WL 88703, at *3 ("plaintiffs allege that when interacting with the defendant's website, their browsers were instructed to send a second, separate GET request to a third-party website . . . In other words, plaintiffs' browsers directly communicate with the

[4] Defendant states that Plaintiffs' reliance on *In re Facebook* is misplaced because that case "has nothing relevant to say about their ECPA claim." MTD Reply at 16. It is unclear what Defendant means by this given that the case expressly addresses the ECPA.

alleged eavesdropper about the webpages they are visiting[.]" (cleaned up)). While Grow Care argues that "Plaintiffs own allegations show that Plaintiffs' 'browsers were communicating ***directly*** with the alleged eavesdropper because the users' browsers were sending [] requests directly to [third party's] servers,'" it does not cite any allegation supporting this assertion. MTD at 27 (emphasis in original) (citing *Cole*, 2025 WL 88703, at *2). Moreover, even assuming that Plaintiffs' browsers unwittingly communicated directly with the Third Parties, this unintended communication cannot reasonably be viewed as bringing the Third Parties within the party exception provided by the ECPA and CIPA. *See Revitch v. New Moosejaw, LLC*, No. 18-CV-6827, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("it cannot be that anyone who receives a direct signal escapes liability by becoming a party to the communication. Someone who presses up against a door to listen to a conversation is no less an eavesdropper just because the sound waves from the next room reach his ears directly."). This reasoning is more persuasive than the overly-mechanical approach taken in *Cole*.

Finally, Grow Care argues that Plaintiffs fail to allege interception of their communications because they voluntarily disclosed their information on the Website. MTD at 27. Grow Care appears to argue that Plaintiffs consented to the Third Parties' use of their information because the Website contains the Privacy Notice and Notice of Privacy Practices, which state that Plaintiffs' information "could be used for the purposes of treatment, payment and health care operations." MTD at 27. This argument should be rejected for several reasons. First, "under the

ECPA consent is not a defense where the communication is intercepted for the purpose of committing any criminal or tortious act[.]" *R.C.*, 733 F. Supp. 3d at 901 (internal quotation marks and citations omitted). As explained above, Plaintiffs adequately plead application of the crime-tort exception. Additionally, Defendant bears the "burden to establish the existence of consent." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 823 (N.D. Cal. 2020) (citing *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014)). Grow Care does not demonstrate that Plaintiffs saw the Privacy Notice and Notice of Privacy Practices, nor does it cite authority supporting the conclusion that merely providing such notices creates consent. *See Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 43 (S.D.N.Y. 2025) (holding it was premature at motion to dismiss stage to determine that plaintiff had consented to website's terms of use because "the pop-up [pertaining to the terms of use] remains at the bottom left corner of the screen" and "[a]ny decision as to whether this pop-up gave [plaintiff] constructive or actual notice of the Terms and elicited her consent to them requires further development of the factual record."). Finally, Grow Care never explains why consent to use Plaintiffs' information "for the purposes of treatment, payment, and health care operations" would include consent to third-party advertising. MTD at 27. The question of whether Plaintiffs consented to the Third Parties using their personal healthcare information for marketing purposes is a factual question that cannot be resolved on this Motion to Dismiss.

Because Plaintiffs adequately plead their CIPA and ECPA claims, Defendant's Motion to Dismiss these claims should be denied.[5]

### 2. Plaintiffs State a Claim Under the CMIA

Under the California Confidentiality of Medical Information Act ("CMIA"), "[a] provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization," subject to certain exceptions. Cal. Civ. Code § 56.10(a). Grow Care claims that Plaintiffs fail to allege a violation of this statute.

Grow Care does not deny that it is a provider of health care, which is defined broadly to include "[a]ny business organized for the purpose of maintaining medical information in order to make the information available to an individual or to a provider of health care . . . for purposes of allowing the individual to manage the individual's information, or for the diagnosis and treatment of the individual[.]" Cal Civ. Code § 56.06(a).[6] Instead, Grow Care argues that Plaintiffs fail to plead that

---

[5] Defendant also argues that Plaintiffs' CIPA claim fails to the extent it is not limited to the California subclass. MTD at 28. Plaintiffs concede that "their CIPA claim and invasion of privacy claim under the California Constitution only apply to the California subclass, not the nationwide class." MTD Opp. at 19 n.1. Because both named Plaintiffs are California citizens, this question is academic at this point and need not be addressed. FAC ¶¶ 44, 48.

[6] Although Plaintiffs do not rely on this provision, Cal Civ. Code § 56.06(d) defines a "provider of health care" as "[a]ny business that offers a mental health digital service to a consumer for the purpose of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual[.]" Because Defendant does not dispute that it is a provider of health care under Cal Civ. Code § 56.06(a), it is not necessary to consider this provision.

they are "patients" of Grow Care because they do not allege that they "received health care services from a provider of health care," but "simply allege that they went through Grow Therapy's booking flow." MTD at 28–29 (quoting Cal Civ. Code §56.05(m)).[7] This argument fails because Plaintiffs allege that they "used Defendant's therapy service via the Website . . . to obtain mental healthcare with a therapist to address [their] anxiety and depression." FAC ¶¶ 45, 49. Drawing reasonable inferences in Plaintiffs' favor, these allegations sufficiently plead that Plaintiffs actually "received health care services" by using the Website to facilitate therapy appointments, such that they fall under the definition of "patient" under the CMIA. Cal. Civ. Code § 56.05(m). The alternative inference from these allegations—that Plaintiffs booked appointments with therapists through the Website but never actually followed through with them—is not the most reasonable inference.

This conclusion is consistent with the treatment of CMIA claims by other courts. Although they did not address the precise argument that Grow Care advances here, other courts have declined to dismiss CMIA claims grounded in similar allegations. *See Pattison*, 2025 WL 1756364, at *1, *6 (denying motion to dismiss CMIA claim where plaintiffs alleged that they used defendant's website "to obtain a variety of medical services"); *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-CV-667, 2024 WL 4369675, at *1, *10 (N.D. Cal. Oct. 1, 2024) (denying motion to

[7] A "patient" is "a natural person . . . who received health care services from a provider of health care and to whom medical information pertains." Cal. Civ. Code § 56.05(m).

dismiss CMIA claim where plaintiffs used defendant's website to "book appointments to access medical care and manage their treatment or diagnosis of medical conditions[.]"); *M.G. v. Therapymatch, Inc.*, No. 23-CV-4422, 2025 WL 1447432, at *2–3 (N.D. Cal. May 19, 2025) (holding plaintiff sufficiently stated a CMIA claim when he alleged that he provided defendant's website "with information about the symptoms he was experiencing, the mental health issues for which he sought treatment, the type of therapy he sought, his preferred type of therapy, and his preferred qualities for a therapist.").

Defendant's reliance on *Wilson v. Rater8, LLC*, No. 20-CV-1515, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021), is misplaced. There, plaintiff visited a doctor for an independent medical examination pursuant to a demand by an insurance carrier. *Id.* at *1. On these facts, the court concluded that plaintiff's examination did not constitute medical treatment. *Id.* at *4–5. In contrast, Plaintiffs allege that they elected to use the Website for mental health treatment. *See* FAC ¶¶ 45, 49. Plaintiffs' allegations also differ from those in *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023), another case Defendant cites, because plaintiffs in that case did not provide "meaningful factual support as to what activities each Plaintiff engaged in on [defendant's] website and what information each Plaintiff provided." *Id.* at 1123. Here, Plaintiffs specify what information they communicated to Defendant through the Website. FAC ¶¶ 45, 49.[8]

[8] After plaintiffs in *Cousin* amended their complaint, the court denied a subsequent motion to dismiss the CMIA claim, holding that plaintiffs "plausibly pleaded their protected

Grow Care also contends that Plaintiffs fail to allege that it disclosed medical information. MTD at 28–29.[9] This argument is unpersuasive because Plaintiffs allege that while using the Website, they "communicated with Defendant that [they were] seeking a therapist that specialized in providing care for anxiety and depression[.]" FAC ¶¶ 45, 49. This meets CMIA's definition of "medical information," which includes an explanation of one's "mental or physical condition" or "treatment." Cal. Civ. Code § 56.05(j)(1). And Plaintiffs allege that Grow Care disclosed this information about Plaintiffs' mental health treatment to the Third Parties by installing the Trackers. FAC ¶¶ 46, 50, 91. *See St. Aubin*, 2024 WL 4369675, at *9 (holding that transmission of URLs including the reason for booking medical appointments and identifiable information such as IP addresses constitutes medical information under the CMIA).

Next, Grow Care argues that Plaintiffs "fail to plead a 'release' of protected information," and that "CMIA only provides for remedies where information is actually released to, or viewed by, a third party." MTD at 29 (citing *Vigil v. Muir Med. Grp. IPA, Inc.*, 84 Cal. App. 5th 197, 215 (2022)). This argument is misguided

---

medical information . . . was disclosed by Defendant." *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 975 (S.D. Cal. 2023).

[9] "'Medical information' means any individually identifiable information, in electronic or physical form . . . regarding a patient's medical history, mental health application information . . . mental or physical condition, or treatment." Cal. Civ. Code § 56.05(j)(1). "Medical information cannot mean just any patient-related information . . . but must be individually identifiable information and include a patient's medical history, mental or physical condition, or treatment. This definition does not encompass demographic or numeric information that does not reveal medical history, diagnosis, or care." *St. Aubin*, 2024 WL 4369675, at *9 (cleaned up).

because courts have recognized that "a health care provider's disclosure of PHI to third-party online advertisers is sufficient to plausibly plead viewing under the CMIA[.]" *St. Aubin*, 2024 WL 4369675, at *10.

Additionally, Grow Care asserts that "a plaintiff pleading a CMIA claim must allege facts showing that the defendant affirmatively intended to disclose the plaintiff's protected information to an unauthorized third party." MTD at 29–30. First, the case that Defendant cites for this proposition, *Sutter Health v. Superior Court*, 227 Cal. App. 4th 1546 (2014), was disapproved of by the California Supreme Court in a May 2026 decision, which "reject[d] the rule [in *Sutter Health*] that no breach of confidentiality has occurred until medical information is actually viewed by an unauthorized person." *J.M. v. Illuminate Educ., Inc.*, 588 P.3d 611, 620 (Cal. 2026). That decision explained that "the key criterion in determining whether a confidant has failed to preserve the confidentiality of information is whether the information is exposed to a significant risk of unauthorized access or use." *Id.* at 721. Second, the Northern District of California has recognized that "Defendant committed an affirmative communicative act when it shared information to Google by embedding Google Analytics code on its website without anonymization." *R.C. v. Sussex Publishers, LLC*, No. 24-CV-2609, 2025 WL 948060, at *6 (N.D. Cal. Mar. 28, 2025). Similarly, Plaintiffs plausibly allege that by integrating the Trackers into its Website, Grow Care intentionally engaged in an affirmative act to share Plaintiffs'

information with the Third Parties. *See* FAC ¶¶ 2, 50, 61, 80, 106.[10] Therefore, Defendant's Motion to Dismiss Plaintiffs' CMIA claim should be denied.

### 3. Plaintiffs State a Claim for Invasion of Privacy and Intrusion Upon Seclusion

Under California common law, a claim for "intrusion upon seclusion" requires showing: "(1) intrusion into a private place, conversation, or matter to which Plaintiffs have a reasonable expectation of privacy (2) in a manner highly offensive to a reasonable person." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022) (citing *In re Facebook*, 956 F.3d at 601). A claim for "invasion of privacy" requires a plaintiff to "show . . . (1) a legally protected privacy interest, (2) a reasonable expectation for privacy, and (3) the intrusion is so serious as to amount to an egregious breach of the social norms." *Id.* (citing *In re Facebook*, 956 F.3d at 601). "Given the similarity of the two tests, courts consider them together and ask (1) whether there is a reasonable expectation of privacy, and (2) whether the intrusion was highly offensive." *Id.* (citing *In re Facebook*, 956 F.3d at 601).

Plaintiffs adequately allege a reasonable expectation of privacy. Numerous courts have recognized that plaintiffs making similar allegations had "an objectively reasonable expectation that their communications with their medical providers [were] confidential based on the laws and regulations protecting the confidentiality

---

[10] Defendant also argues that "Grow Care maintains Business Associate Agreements with the vendors that provide the [Trackers] that permit data sharing under HIPAA[.]" MTD at 30. These agreements are not properly considered on a Motion to Dismiss. Moreover, Grow Care's argument that "Plaintiffs do not sufficiently allege a lack of consent for the alleged disclosures," is not persuasive for the same reasons that it fails in relation to Plaintiffs' ECPA and CIPA claims. *Id.*

of medical information." *St. Aubin*, 2024 WL 4369675, at *12 (quoting *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 800 (N.D. Cal. 2022)). The First Amended Complaint alleges that Plaintiffs shared the type of mental health treatment they were seeking "with the understanding that it would be reviewed by a therapist in connection with providing [them] with mental health treatment" and with the "reasonable expectation that their communications about their mental health conditions and treatment, and other private information, would remain confidential[.]" FAC ¶¶ 45, 49, 175. It is reasonable to expect that information provided for purposes of obtaining mental health treatment would be reviewed by a therapist and otherwise be kept private.

Plaintiffs also adequately allege a highly offensive intrusion. To determine whether an intrusion is "highly offensive," courts consider "the degree and setting of the intrusion, and the intruder's motives and objectives." *Hernandez v. Hillsides, Inc.*, 211 P.3d 1063, 1073 (Cal. 2009) (citations omitted). Because the question of what conduct is highly offensive is factual and "best left for a jury," "[u]nder California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) (citations omitted). Plaintiffs contend that the "invasion of privacy is highly offensive and serious in nature, scope, and impact because it relates to patients' private mental health condition and treatment communications." FAC ¶ 177. Numerous courts have declined to dismiss invasion of privacy claims related to the

disclosure of medical information. *See St. Aubin*, 2024 WL 4369675, at *13 (collecting cases). Drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs adequately allege that Grow Care's disclosure of their mental health concerns to the Third Parties for advertising purposes was highly offensive.

Defendant cites *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943 (N.D. Cal. 2017), to argue that "none of Plaintiffs' allegations show that any of the purported disclosures from the Website would be understood or linked to *Plaintiffs'* specific health or condition." MTD at 31 (emphasis in original). In *Smith,* Facebook allegedly tracked visits to websites containing "general health information that is accessible to the public at large." 262 F. Supp. 3d at 954–55. In contrast, Plaintiffs here allege that they disclosed the precise type of mental health treatment that they sought. FAC ¶¶ 46, 50. Thus, the alleged disclosure of information was linked to Plaintiffs' particular health conditions.

Defendant's remaining arguments also lack merit. For example, Grow Care claims that Plaintiffs "fail to allege facts showing that any . . . information was improperly disclosed to a third party," MTD at 31, but the First Amended Complaint plausibly alleges that Plaintiffs' PHI and PII were disclosed to third parties. FAC ¶¶ 46, 50. Moreover, Defendant's argument that Plaintiffs do not adequately plead lack of consent fails for the reasons described in Section III(B)(1)(b) above. MTD at 32.[11] Therefore, Grow Care's Motion to Dismiss

[11] Plaintiffs concede that they do not seek monetary damages under the California Constitution. MTD Opp. at 29. Thus, Grow Care's argument that damages are unavailable for this claim is moot. MTD at 32.

Plaintiffs' claims for invasion of privacy and intrusion upon seclusion should be denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Judicial Notice Motion is **GRANTED IN PART and DENIED IN PART**. Additionally, the undersigned respectfully **RECOMMENDS** that Defendant's Motion to Dismiss be **DENIED.**

## PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. *See* Fed. R. Civ. P. 6(a), (b), (d). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Vernon S. Broderick, United States Courthouse, 40 Foley Square, New York, New York 10007-1312. Any requests for an extension of time for filing objections must be directed to Judge Broderick.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *see Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: October 22, 2026
New York, New York

Henry J. Ricardo
United States Magistrate Judge